Mungo J. Currie et al., complainants and appellants,

*v.*

The New York Transit Company and The National Docks Railway Company, defendants and respondents.

[Argued December 3d, 1903.  Decided June 20th, 1904.]

1. The quantity of interest which a railroad corporation acquires in land, taken by it under the power of eminent domain, is that which the statute conferring the power authorizes it to take. When the statute declares that the corporation shall be seized and possessed in fee-simple of the land so taken, an estate in fee becomes vested in the corporation; when the statute limits the acquisition to a less estate than a fee, only such less estate passes.

2. When a railroad corporation, incorporated under the General Railroad law, takes land by the exercise of the power of eminent domain conferred upon it by the provisions of that act, the whole present estate in the land becomes vested in the corporation, and the former owner retains no interest therein for the protection of which he is entitled to invoke the aid of a court of equity.

On appeal from a decree advised by Vice-Chancellor Stevenson.

*Mr. Charles C. Black,* for the appellants.

*Messrs. Collins & Corbin,* for the respondents.

The opinon of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The New York Transit Company laid an oil pipe line on the right of way of the National Docks Railway Company, with the consent of the latter. A part of this right of way was acquired by the Bergen Neck Railroad Company (to whose rights the National Docks Railway Company has succeeded) from the predecessors in title of the appellants by condemnation proceedings taken under sections 12 and 13 of the General Railroad law—the Bergen Neck Railroad Company having been incorporated under that statute. The bill in this cause was filed to compel the removal of the pipe line from this portion of the right of way, the contention of the appellants being that they still retain, in the land condemned, such an interest as entitles them to prevent it from being used for any other than strictly railroad purposes, and that the Bergen Neck company only acquired by the condemnation proceeding "a right of way for railroad purposes over and across the land in question, leaving the fee therein, and in and to the soil thereof, vested in" the appellants.

On final hearing the bill of complaint was dismissed, on the ground that the appellants had no such interest in the land condemned as entitled them to interfere with the use to which it was being put by the respondents, even though such use was *ultra vires* the corporation. The complainants appeal from the decree of dismissal.

The extent of the interest acquired by a railroad corporation in lands condemned by it has been the subject of frequent discussion, and much variance of opinion has been expressed on the subject, not only generally but in our own decisions. In the

Currie *v.* N. Y. Transit Co. and National Docks Ry. Co.

case of *Taylor* v. *New York and Long Branch Railroad Co.,* *9 Vr. 28,* Chief-Justice Beasley says: "The fee in the land is not acquired by the company, but a mere easement in such land; the title remains in the owner, the property being made servient to the purposes of the railroad." In the case of *New Jersey Zinc and Iron Co.* v. *Morris Canal and Banking Co., 17 Stew. Eq. 404,* Vice-Chancellor Van Fleet declares that "where the state invests a corporation with the sovereign prerogative of eminent domain for the purpose of enabling them to construct and operate a public highway, and take land by force of their charter, or by any other means than by grants for the purposes of such highway, it is manifest that the plain purpose of the grant to them is not to give them capacity or invest them with power to take a fee, but merely to give them power to acquire such an easement in the land as will enable them fully to accomplish the purpose for which they were created." On appeal to this court the *Zinc Company Case* was affirmed on the opinion of the vice-chancellor. *2 Dick. Ch. Rep. 598.* In the case of *Pennsylvania Railroad Co.* v. *Breckenridge, 31 Vr. 583,* Justice Adams, delivering the opinion of this court, declares that a grant of power to condemn lands for railroad purposes "will be construed to give merely the power to take an easement adequate to the accomplishment of the corporate design." On the other hand, in the case of *De Camp* v. *Hibernia Mine Railroad Co., 18 Vr. 43,* Justice Depue expresses the opinion that by condemnation proceedings an estate in the land itself was vested in the company and not a mere easement therein. So, too, Chief-Justice Beasley, in the case of *New York, Susquehanna and Western Railroad Co.* v. *Trimmer, 24 Vr. 1,* fifteen years after the delivery of his opinion in the *Taylor Case,* changing the view expressed by him in that case, held that the interest acquired by condemnation proceedings was not a mere easement in the land but such an estate as would support an action of ejectment brought to recover possession of it. Again, in the late case of *United States Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co., 33 Vr. 254,* Justice Depue,

delivering the opinion of this court, reiterated the view expressed by him in the *De Camp Case.*

Notwithstanding that three of the decisions referred to are those of this court, the question presented by this appeal is not one to which the doctrine of *stare decisis* is applicable, for the reason that the expression of view as to what interest in the land was acquired by a corporation by the exercise of the power of eminent domain was, in each of these cases, entirely *obiter.* In the *New Jersey Zinc and Iron Company Case,* the land, which was the subject-matter of the controversy, was claimed by the canal company not by virtue of any condemnation proceedings taken for the purpose of acquiring it, but solely by adverse possession for more than twenty years. The same situation existed in the case of *Pennsylvania Railroad Co.* v. *Breckenridge.* In the *United States Pipe Line Company Case* the question presented was the right of the pipe line company to lay its pipe across lands held by the railroad company, not by virtue of any condemnation proceeding but by conveyance.

The quantity of interest which a railroad corporation obtains in land taken by it under the power of eminent domain is that which the statute conferring the power authorizes it to acquire. The legislature may authorize the taking of a fee, or any less estate, in its discretion. *United States Pipe Line Co.* v. *Delaware, Lackawanna and Western Railroad Co., supra; Sweet* v. *Buffalo, &c., Railroad Co., 79 N. Y. 299, 300.* It is manifest, therefore, that it cannot rightly be said, on the one hand, that nothing is ever acquired by such proceedings except a mere easement in or right of way over the land condemned; nor, on the other hand, that something more than a mere easement, or right of passage over or through the land, is always acquired. For instance, in the charter of the Morris and Essex Railroad Company, under which the Delaware, Lackawanna and Western Railroad Company is operating its railroad in this state, and the provisions of which called forth the expression of opinion of Justice Depue in the *United States Pipe Line Company Case* before referred to, the declaration of the statute, in conferring the power to condemn land, is, that, upon the making of the

Currie *v.* N. Y. Transit Co. and National Docks Ry. Co.

award by the commissioners (or upon the rendition of the verdict by the jury on appeal from the award) and "upon payment of the sum so found by the commissioners or by the jury, with costs, if any, the said corporation shall be deemed to be seized and possessed *in fee-simple* of all such lands and real estate," &c. (*P. L. of 1835 p. 28*); while the power conferred by the statute involved in the decision of the case of *De Camp* v. *Hibernia Mine Railroad Co., supra,* is as follows:

"That when any corporation formed under the provisions of this act shall take legal proceedings to acquire the right of way for its proposed railroad beneath the surface of the earth, such right of way shall not include the right to permanently use or occupy the surface of the earth immediately above such railroad, but shall be confined to a mere right to tunnel and excavate the earth for its tracks."   *P. L. of 1879 p. 167 § 3.*

It needs no argument to show that the interest acquired in land by virtue of proceedings taken under the one statute is as widely different from that acquired from proceedings taken under the other, as would be the case were the interests obtained by deed or grant from the landowner instead of by the exercise of the power of eminent domain.

The extent of the interest which the National Docks Railroad Company has in the land involved in this litigation is that which the Bergen Neck Railroad Company was authorized to acquire by the provisions of sections 12 and 13 of the General Railroad law. Section 12 of the act provides that, in case of the inability of the company to purchase land needed by it for the purposes of its road, commissioners shall be appointed "to examine and appraise the said land and assess the damages;" that such commissioners shall

"proceed to view and examine the said land, and to make a just and equitable estimate or appraisement *of the value of the same* and an assessment of damages to be paid by the company for such land, which report shall be made in writing, and filed in the clerk's office of the county in which the land is situate; and thereupon, and on payment or tender of the amount awarded, the said company is empowered to enter upon and take possession of the said land, for the purposes aforesaid, and the said report, and proof of payment or tender of the amount awarded, shall at all times be considered as plenary evidence of the right of the company to *have, hold, use, occupy, possess and enjoy the said land.*"

Section 13 of the act authorizes an appeal from the award of the commissioners by either party and a trial by jury, and declares that, on such appeal, "it shall be the duty of the jury to assess the value of the land and damages sustained." The only effect of section 13 is to substitute the verdict of the jury, in case of an appeal, for the award of the commissioners.

By these statutory provisions the company is not limited to the acquisition of a mere easement or right of passage over the land condemned. It is authorized to acquire the land itself when, in its judgment (subject to the usual judicial review *in limine*), the exigencies of the case demand it. When the land itself is sought to be taken and not a mere temporary right or limited interest in it (as was the case in *Hepburn* v. *Jersey City, 38 Vr. 114; S. C. on error, 38 Vr. 686*), the commissioners and the jury, on appeal, are to estimate and assess the value of *the land,* and the company must pay the value so estimated and assessed as a prerequisite to its right to enter and take possession. When they have made the payment they are to have, hold, use, occupy, possess and enjoy *the land* so long as they devote it to the uses for which they are authorized to acquire it. Where land is held by a railroad company under a deed containing the words of this statute, it can hardly be doubted that the conveyance, having been made in consideration of the payment of the full value of the land, operates to strip the grantor of all present estate, right, title and interest in the land, and to vest the same in the company so long at least as its corporate life continues to exist and so long as it continues to devote the land to the uses which its charter prescribes, "and there seems no reason [to quote the language of Chief-Justice Beasley in *New York, Susquehanna and Western Railroad Co.* v. *Trimmer, supra*] why this language, as it stands in this statute, is to be interpreted differently from what it would if it were found in a deed from the landowner to the company."

It is contended that, because the right of the company to enter and take possession of the land, after payment of the award, is given by the statute "for the purposes aforesaid," the landowner still retains such an interest in the land as will enable

him to restrain an unauthorized use of it by the company. But the words quoted do not operate to restrict the quantity of the interest which passes to the company by virtue of the condemnation proceeding, or to reserve to the landowner any rights in the lands taken. They merely limit the uses to which the lands may be put. And it is to be observed that this limitation is not confined to lands taken by the exercise of the power of eminent domain. The charter of the company (the General Railroad law) imposes it equally upon lands acquired by conveyance from the owner. Whether the land be acquired by the one method or the other, when the company enters upon and takes possession thereof it does so for the purpose of subjecting it to the uses which its charter authorizes.

Nor does the fact that, while in possession and so using the land, the company subjects it to an additional and unauthorized use operate to divest it, to any extent, of the estate which it has acquired therein. *McKelway* v. *Seymour, 5 Dutch. 321.*

The complainants' bill therefore was properly dismissed, for, as the condemnation proceeding vested in the Bergen Neck Railroad Company the whole present estate in the land, and that estate was not divested by the act of its successor in subjecting the land to the additional and unauthorized use complained of, the complainants had no interest therein for the protection of which they were entitled to invoke the aid of a court of equity. *Barnett* v. *Johnson, 2 McCart. 481.*

It may be that the state, acting through the attorney-general, may restrain the unauthorized use by a railroad company of lands acquired by it under its charter powers. This, however, is a question not involved in the case and, therefore, one not now requiring consideration.

The decree appealed from should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON; FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, VREDENBURGH, GREEN, GRAY—10.

*For reversal*—DIXON, BOGERT, VROOM—3.