## WESTERN UNION TELEGRAPH COMPANY *v.* PENN-SYLVANIA RAILROAD COMPANY.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 90. Argued October 19, 20, 1904.—Decided December 12, 1904.

*Western Union Tel. Co.* v. *Pennsylvania R. R. Co. et al, ante,* p. 540 followed to effect that the act of July 24, 1866, 14 Stat. 221, does not confer any right of eminent domain on telegraph companies and that a railroad company's right of way is not a public highway within the meaning of that act.

Eminent domain cannot be delegated, and the lessee of a corporation cannot exercise the power of condemnation conferred by legislature on the lessor.

THE facts are stated in the opinion.

*Mr. John F. Dillon, Mr. Rush Taggart* and *Mr. Henry D. Estabrook* for plaintiff in error as to the special points involved in No. 90.[1]

The Atlantic and Ohio Telegraph Company was authorized by its charter to appropriate to its use, within specified limitations, property of a specific character, to wit, the roads, highways, streets and waters of the State of Pennsylvania. Defendant's railroad is not only a highway of the State in its very nature, but by its charter and the constitution of Pennsylvania is expressly declared to be a highway. Hence, it is subject to the appropriation of the Atlantic and Ohio Telegraph Company, within the limitations of the right granted. § 1, art. 17; §§ 3, 12, art. 16, constitution Pennsylvania; cl. 1, § 33, and cl. 2, ch. 6, act of Pennsylvania legislature, April 29, 1874; *Trunnick* v. *Smith,* 63 Pa. St. 18.

---

[1] For abstract of argument on other questions involved in this case, see *ante,* p. 547.

As lessee of the franchises of the Atlantic and Ohio Tele-. graph Company, the Western Union Telegraph Company has the right in its own name to exercise such franchises, including the franchise of eminent domain.

This was practically conceded by the trial judge, who held, however, that the Atlantic and Ohio Telegraph Company was not authorized under its charter to appropriate to its use a railroad right of way, even within the limitations imposed—to wit, that the use should not interfere with the common use of such highway, or incommode the public use thereof.

Not only would the Western Union Telegraph Company have the right to condemn in its own name, under the express terms of the Atlantic and Ohio charter already quoted, but it would have the right under the general principles and policy of law, which justifies the condemnation only upon the theory that the property when condemned is for the use of the public, by whomsoever condemned, and that the *delectus personarum* is of little more than theoretical importance, and is the least determining element in the more common cases where the power is conferred. *Abbott* v. *N. Y. & New England R. R. Co.* (Mass.), 15 N. E. Rep. 91; *Cal. Cent. Ry. Co.* v. *Hooper,* 76 California, 404; *Crolley* v. *Minn. & St. Louis R. R. Co.,* 30 Minnesota, 541; *C. & W. I. R. R. Co.* v. *I. C. R. R. Co.,* 113 Illinois, 156; *Kip* v. *N. Y. & Harlem R. R. Co.,* 6 Hun, 24; *S. C.,* 67 N. Y. 227.

*Mr. John G. Johnson* for defendant in error.[1]

MR. JUSTICE MCKENNA delivered the opinion of the court.

This was a petition on the law side of the Circuit Court for the Western District of Pennsylvania to condemn part of the defendant's right of way and appropriate it to telegraph purposes. There was also a bill on the equity side praying for an injunction to restrain defendant in error from dispossessing

---

[1] For abstract of argument in this case, see *ante.,* p. 555.

plaintiff in error during the pending of the condemnation proceedings.

The Circuit Court refused to approve the bond tendered with the petition for condemnation and ordered the petition dismissed. 120 Fed. Rep. 362. The Circuit Court of Appeals affirmed that action. 123 Fed. Rep. 33.

The bill in equity, though not before us technically, has been freely referred to in argument, and, besides, many of the allegations of the petition are the same as those in the bill and appeal passed on in Nos. 89 and 199. The same rights are asserted under the act of July 24, 1866, as there considered. The contention here, as there, is that the Telegraph Company has the right to maintain its lines of telegraph over and along the railroads of the Railroad Company upon making compensation to the Railroad Company for the use so appropriated, so long as the maintenance of its telegraph lines does not materially interfere with the ordinary travel of such roads, and that the right can be asserted by proceedings in eminent domain. It is conceded that there is no general law of Pennsylvania giving that right to the Telegraph Company. The contention that such right is given by the act of 1866 we considered in Nos. 89 and 199, and decided against the contention. But there are other elements in this case. The Telegraph Company is the lessee of the Atlantic and Ohio Telegraph Company (the lease is terminable at the option of either party by giving six months' notice) and claims eminent domain as successor of that company. The claim rests upon the statute of Pennsylvania incorporating the Atlantic and Ohio Telegraph Company. That statute was passed in 1849, and provided, in section five, that it should be lawful for the company " to erect and construct works, edifices, fixtures and structures along and across any of the roads, highways, streets and waters within this State; the said works to be so placed as not to interfere with the common use of such roads, highways, streets and waters." The company was authorized to enter into and occupy any land for the purposes of locating and

constructing its lines upon securing or tendering such compensation as might be agreed on between it and the owners of the land, or in the manner mentioned in the statute. The Circuit Court and the Circuit Court of Appeals rejected the claim of the Telegraph Company based on that act. The decision was rested on two grounds: (1) That railroads were not highways within the meaning of the statute; and (2) as expressed in the opinion of the Circuit Court of Appeals: "No authority to enter upon the right of way of railroads was plainly and distinctly granted, and it is well settled that the right of eminent domain may be exercised by a corporation, in any case, only when granted in express terms or by necessary implication, and that property held and applied by one corporation for a public use cannot be appropriated by another for its use without authority clearly expressed, or which may be implied from the fact (which in this case does not exist) that the use claimed is absolutely necessary to the accomplishment of the purpose for which the claimant corporation was created. *Penna. R. R. Co.'s App.*, 93 Pa. St. 150; *Pittsburg Junction R. R. Co.'s App.*, 122 Pa. St. 511; *Sharon Ry. Co.'s App.*, 122 Pa. St. 533; *Groff's App.*, 128 Pa. St. 621; *Perry Co. R. R. v. N. & S. V. R. R. Co.*, 150 Pa. St. 193; *Phillips v. D., W. & P. R. R. Co.*, 78 Pa. St. 177; *Glover v. Boston*, 14 Gray, 282."

(1) In the opinion in Nos. 89 and 199 we marked a distinction between highways and railroads against a contention which identified them in legal meaning and effect. We need not enlarge upon what we there said. Highways and railroads may be assimilated in legal contemplation to a certain extent, and considerations which apply to one within that extent apply to the other. To apply them beyond that extent would be to confound the distinctions of common speech and practice and destroy property rights long recognized to exist. And we do not deem it necessary to follow and answer in detail the very able arguments of counsel. It is enough to say that they have carried the analogies between ordinary high-

ways and railroads too far; indeed, have gone beyond analogy, and have contended for almost legal coincidence in attributes and effect.

(2) But there is another rule applicable to grants of eminent domain which is also fatal to the contention of the Telegraph Company for the rights claimed by the Telegraph Company under the lease from the Atlantic and Ohio Telegraph Company. Eminent domain cannot be delegated. Lessees cannot exercise it. 1 Lewis Eminent Domain, section 243, and cases cited. It is to meet this prohibition probably that certain allegations of the petition are made. It is alleged that the Atlantic and Ohio Telegraph Company entered into a "contract to lease" with the Telegraph Company the first of April, 1864; that afterwards the former company made an agreement with the Railroad Company whereby the latter company granted to the said Atlantic and Ohio Telegraph Company permission to construct and maintain a line of telegraph wires "along and adjacent to the line of railroad" from Philadelphia to Pittsburgh, "without limit as to term and duration," which contract was afterwards assigned to the Telegraph Company (plaintiff in error), and the assignment was ratified and affirmed by the act of the legislature of Pennsylvania, entitled: "An act supplemental to an act entitled 'An act to incorporate the Atlantic and Ohio Telegraph Company, approved March 24, 1849, and to confirm certain agreements executed by said company,'" approved May three, one thousand eight hundred and seventy-one, the same as if the said lease and contract had been made by virtue of express authority of law, the said act of assembly also providing that said Atlantic and Ohio Telegraph Company should have and possess all the rights, powers and privileges conferred by the third and fourth sections of the act of the legislature of Pennsylvania to incorporate the Eastern Telegraph Company, approved the fifth day of April, 1866.

This act, the petition alleged, gave to the Telegraph Company "all the corporate rights, powers, privileges and fran-

chises of said Atlantic and Ohio Telegraph Company, including the right to appropriate, on inability to agree with the owner, all lands necessary for the construction, maintenance and operation of the said lines of telegraph from Philadelphia to Pittsburgh, with any and all such branches therefrom as it may think proper."

The acts cited affirmed agreements or leases theretofore made. Subsequent agreements were provided for, if at all, by sections 3 and 4 of the act incorporating the Eastern Telegraph Company, as follows:

" SEC. 3. That the said corporation shall have power to connect by contract, with other persons or corporations having other telegraphic lines within or out of this State, for the purpose aforesaid; and it may also form a union with or lease to other corporations, associations or individuals, incorporated by this Commonwealth or any other State, its own lines, with their fixtures and apparatus, or lease from any individuals, associations or corporations incorporated by this Commonwealth, or any other State, their lines, fixtures and apparatus, and when such unions as aforesaid are formed the stock may form a common stock upon such terms and conditions as the said companies or associations respectively shall agree upon, and that as soon as such union shall be effected and a true copy of the agreement made for that purpose, duly certified under the corporate seal of the said companies, shall have been filed in the office of the secretary of the Commonwealth, the stockholders of the said companies shall become one body, corporate and politic, under such name and style as they shall adopt and agree upon and embody in their certificate, with all the rights and privileges incident to a corporation and with all the rights, powers and privileges which, by virtue of this act, are vested in the company hereby incorporated.

" SEC. 4. That the said corporation shall have power to purchase, make, use and maintain any connecting or side lines."

Under those sections the Atlantic and Ohio Telegraph Com-

pany was authorized to lease its lines to the Telegraph Company. A lease had already been made, as we have seen. Those sections also authorized the companies to "form a union" and "become a body corporate and politic, under such name and style" as they should adopt. That was not done. The Telegraph Company, therefore, is the simple lessee of the Atlantic and Ohio Company, and has only the powers of a lessee, and as such cannot exercise the right of eminent domain conferred on the Atlantic and Ohio Company.

It is, however, further alleged that the Telegraph Company, by the power vested in it by the lease from the Atlantic and Ohio Company and the acts of the Pennsylvania legislature confirming the same, and "in the exercise of all and every other power enabling it in anywise to do so," duly located a single line of telegraph along and upon the right of way of the Railroad Company and attempted to agree with the latter company upon the prices of compensation therefor; and "that the aforesaid corporate action of the Western Union Telegraph Company has been duly ratified and approved by corporate action in that behalf by the said Atlantic and Ohio Telegraph Company."

It will be observed that the location, so called, was made by the Telegraph Company and in its own name. It was not made by the Atlantic and Ohio Company and in its name. And the Atlantic and Ohio Company is not a party to this action. The action was commenced and is prosecuted by the Telegraph Company alone. The prayer is that, upon the payment of the compensation which shall be directed to be paid for the "rights and interests acquired thereby (that is, by the statutes and proceedings set out in the petition) by the said Western Union Telegraph Company, possession be adjudged to the Western Union Telegraph Company by this court of the said use, right and interests according to law, and that the title to the said 'rights and interests as against the defendant thereby vest in the said Western Union Telegraph Company for the purposes aforesaid;

If it can be said that under the allegations of the petition the Atlantic and Ohio Company retains its rights as the lessor of the Telegraph Company, still as to such rights it is a necessary party. To have made it a party might have precluded jurisdiction in the Circuit Court.

But the Telegraph Company contends for eminent domain in its own right as lessee of the Atlantic and Ohio Telegraph Company, and in its own name, and combats the view that it cannot receive a delegation of that power. The following cases are relied on: *California Central Ry. Co.* v. *Hooper*, 76 California, 404; *Crolley* v. *Minneapolis & St. Louis Ry. Co.*, 30 Minnesota, 541; *C. & W. I. R. R. Co.* v. *I. C. R. R. Co.*, 113 Illinois, 156; *Kip* v. *N. Y. & Harlem R. R. Co.*, 6 Hun, 24; aff'd, 67 N. Y. 227; *Abbott* v. *N. Y. & N. E. R. R. Co.*, 145 Massachusetts, 450.

These cases do not sustain the contention. In the case in 76 California a corporation commenced proceedings in eminent domain. It afterwards consolidated with other corporations. The new corporation thus created was held to be entitled to continue the proceedings in its own name and for its benefit, because it had acquired that right in the manner provided by the statutes of the State.

In 30 Minnesota a railroad corporation condemned, paid for and took certain land for its right of way. Without constructing its road, it transferred the right of way to another railroad corporation. The owner of the land taken brought ejectment for it, alleging the invalidity of the transfer. It was held that his interests were not affected by the transfer, and he could not question the capacity of the first company to make, nor the second company to receive, the transfer.

In 113 Illinois the facts are somewhat complicated, but the point decided relevant to our present discussion is, that it mattered not that the necessity for an increase of a right of way of a railroad company for additional tracks was caused by the use of the road by other companies acting under lease or by contract, nor by what company or companies the road

was operated. It was still a public use, and (to quote the court) "the needs of the lessees are as those of the lessor company, and any condemnation for their wants may proceed in such latter company's name, and it all the while stands responsible for the running of the road." *Kip v. N. Y. & H. R. Co.*, 6 Hun, 24; *S. C.*, 67 N. Y. 227, were cited.

If this case supports one contention of the Telegraph Company, it destroys another. It establishes that if the right of eminent domain is given to the Telegraph Company by the lease from the Atlantic and Ohio Telegraph Company that right can only be exercised in the name of the latter company. And such is also the effect of the cited cases, or rather the cited case, for it is only one case appearing at different stages in the reports. The plaintiff in the case, who was appellant in the Court of Appeals (67 N. Y. 227), brought suit against the defendant company to restrain it from prosecuting proceedings to condemn certain lands owned by him in the city of New York. He had leased them to the company for twenty-one years, and his contention was that the condemnation proceedings would impair the obligation of the lease and should be enjoined.

The plaintiff alleged also a lease by the defendant of its road and property to the New York Central and Hudson River Railroad Company for 401 years, and claimed that the lease abrogated the proceedings to condemn the land, and terminated and removed all necessity for its acquisition for the use of the defendant. It was held (1) that the relation created by the lease was no impediment to the exercise of eminent domain conferred upon the company by the statute of the State; and (2) that the proceedings to condemn were not affected by the lease. The court observed that the same necessity existed in favor of the defendant after as before the lease, and if the necessity was only in favor of the lessee it was competent for "the lessee to continue the proceedings *in the name of the defendant.*" (Italics ours.)

In *Abbott* v. *N. Y. & N. E. R. R. Co.*, the question involved was whether the power to take land by eminent domain may be given to a foreign corporation, and whether a corporation by the consent of the legislature may take the power as a *quasi* successor of another corporation to which it was originally granted. Under the statutes of the State those questions were answered in the affirmative, and it was in regard to those questions and statutes that Chief Justice Holmes, now a justice of this court, said that the reasons which have led some courts and judges to doubt the necessity of the consent of the legislature to a transfer of the right of eminent domain from one corporation to another " show that the *delectus personarum* is of little more than theoretical importance, and is the least determining element in the more common cases where the power is conferred." The case is not like that at bar, and need not be further analyzed.

A case more applicable to the case at bar is *Mayor and Aldermen of Worcester* v. *Norwich & Worcester R. R. Co.*, 109 Massachusetts, 103. In that case the railroad company was required to unite with others in establishing a passenger station. Resisting the proceedings which were brought to appoint commissioners to select a location, it was urged that it might become necessary to exercise the right of eminent domain, and against that the railroad pleaded a lease to the Boston, Hartford and Erie Railroad Company, which had been confirmed by the legislature. There were other transfers of interests, and of them and the lease the court said : "Yet none of these leases or assignments can be construed to extend to the lessees or assignees the power to exercise the right of eminent domain, or to restrict the right of the legislature to alter or repeal the charters." And again: "The lease by the Norwich and Worcester Railroad Company did not make the lessees, or their representatives, parties to the grant of power to exercise the right of eminent domain. The right remained in the original corporation, and the legislature might properly deal with it exclusively in amending their (its) charter."

*Judgment affirmed.*

MR. JUSTICE HARLAN, dissenting.

The judgment of the Circuit Court in this case rests mainly upon the same grounds as the judgment in cases Nos. 89 and 199. For the reasons stated in my opinion in those cases, I dissent from the opinion and judgment in this case.