## UNITED STATES v. SOUTHERN POWER CO.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2764.

H. H. Clarke, Asst. Sol., U. S. Department of Agriculture, of Washington, D. C., and Joseph A. Tolbert, U. S. Atty., of Greenville, S. C. (R. W. Williams, Sol., U. S. Department of Agriculture, of Washington, D. C., on the brief), for the United States.

W. S. O. 'B. Robinson, Jr., of Charlotte, N. C., and H. J. Haynsworth, of Greenville, S. C. (J. C. McGowan, of Charlotte, N. C., and C. F. Haynsworth, of Greenville, S. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and COLEMAN, District Judge.

PARKER, Circuit Judge (after stating the facts as above). We think that the decree of the judge below denying the injunction was clearly right, and this for three reasons, viz.: (1) Because the right of way in question had been acquired by defendant, and had been marked out and defined and devoted to a public use prior to the institution of the condemnation proceedings, and the statutes under which the government proceeded did not authorize the condemnation of such property; (2) because, in view of the agreement between the parties, the defendant was not a trespasser upon the lands of the government, whatever view be taken as to the title acquired in the condemnation proceedings; and (3) because the government, not having tendered a permit to defendant in accordance with its agreement, was not in position to invoke the aid of a court of equity.

On the first proposition, the statutes upon which the government relies for the validity of the condemnation proceedings are the Weeks Law of March 1, 1911, 36 Stat. 962, 16 USCA § 516, and the Condemnation Act of

August 1, 1888, 25 Stat. 357, 40 USCA § 257. The Weeks Law merely authorized the purchase of lands for forestry purposes. It did not expressly authorize the acquisition of the rights of way of public service corporations, nor did it contain any provision for condemnation. The Act of August 1, 1888, however, authorized the condemnation of all lands which an officer of the government had been or might thereafter be authorized to acquire; and, inasmuch as the Weeks Law authorized the acquisition of lands for forestry purposes, it is clear that condemnation for such purposes was proper under the Act of August 1, 1888. U. S. v. Graham & Irvine (D. C.) 250 F. 499; Albert Hanson Lumber Co. v. U. S., 261 U. S. 581, 587, 43 S. Ct. 442, 67 L. Ed. 809.

■ It by no means follows, however, that condemnation of the rights of way of public service corporations was authorized in a proceeding to acquire land for forestry purposes. While it is well settled that land devoted to a public use may be taken for another public use under the power of eminent domain, it is equally well settled that this may not be done, unless the intention of the Legislature to that effect has been manifested in express terms or by necessary implication. 20 C. J. 602; Western Union Tel. Co. v. Pennsylvania R. Co., 195 U. S. 594, 597, 25 S. Ct. 150, 49 L. Ed. 332, 1 Ann. Cas. 533; Adirondack Railway v. New York State, 176 U. S. 335, 339, 20 S. Ct. 460, 44 L. Ed. 492; Portland R. Light & Power Co. v. City of Portland (C. C.) 181 F. 632, 634. It is true that this rule is ordinarily applied in grants of power to public service corporations, and not where the power is being exercised by the state itself for its immediate purposes. U. S. v. City of Tiffin (C. C.) 190 F. 279. But it is based, not upon any lack of power upon the part of the government, but upon the presumed intention of the Legislature, and should be held to apply in condemnation proceedings, even by the state itself, where the prior public use could not reasonably interfere with the purpose for which condemnation is authorized.

Now, the purposes of the government in acquiring land for a forest reserve are primarily to protect the timber growing thereon and to guard against drainage conditions which are productive of floods. These purposes are not appreciably interfered with by the fact that the forest lands are crossed by rights of way of public utilities; and it is unreasonable to assume that Congress, in granting the right to acquire lands for forestry purposes, intended to grant also the right to condemn such rights of way. Such condemnation would serve no useful purpose, and would necessarily involve inconvenience and loss to the public and needless expense to the government. Furthermore, such rights of way are used by the corporations owning them in performing public services under grants of power from the several states; and it is not to be assumed that Congress intended to interfere with them in the performance of their public duties, in the absence of a clear manifestation of such intent.

We think, therefore, that the acts relied upon by the government are not to be construed as authorizing the condemnation for forestry purposes of the rights of way of public service corporations. As stated above, the power to acquire such rights of way was not expressly given by the Weeks Law, and, so far as lands for forestry purposes are concerned, the act of 1888 merely authorizes the condemnation of what might be acquired under that act. Both acts taken together do not expressly authorize the condemnation of such rights of way, and the authority to condemn does not result by necessary implication. And this interpretation seems to be the interpretation placed upon these statutes by Congress itself in the Act of March 4, 1913, 37 Stat. 855, 16 USCA § 518, which provides that the acquisition of lands under the Weeks Law "shall in no case be defeated" because of located or defined rights of way, etc., and authorizes the acquisition of such lands subject to the rights of way. The fact that Congress contemplated that the acquisition of lands might be defeated by the existence of rights of way shows clearly that it was not intended that such rights of way might be condemned.

■ The right of way here in question had been acquired, marked out, and defined, and the power line had been constructed, a number of years before the condemnation suits were instituted by the government. Nevertheless, it was not mentioned in the pleadings in the condemnation suits, and no compensation was paid to defendant on account of it. The various tracts involved in the suits for condemnation were condemned as forest or agricultural land on the basis of the acreage. The government contends, however, that, notwithstanding this, it obtained title free and clear of the easement of defendant because defendant was made a party to the suits, and the judgments provided that the lands be condemned for the United States "freed and disencumbered from any and all

liens or claims of any nature or kind whatsoever." Without passing upon the interesting questions raised by the failure to mention the easement of defendant in the pleadings or to pay compensation for its taking, we think that the judgments could not have the effect of divesting the title of defendant to its right of way, as the condemnation of property previously dedicated to a public use was not authorized by the statute under which the suits were instituted. "The extent of the title or rights acquired by a condemnor depends upon the authority to take. <sup>*</sup> * * " And "the extent of the authority to take depends upon the statute conferring the power." 20 C. J. 1221; Currie v. New York Transit Co., 66 N. J. Eq. 313, 58 A. 308, 105 Am. St. Rep. 647; Tacoma Safety Deposit Co. v. Chicago, 247 Ill. 192, 93 N. E. 153, 31 L. R. A. (N. S.) 868, 20 Ann. Cas. 564.

It is true that the agreement of the parties, entered into prior to the condemnation proceedings, contemplated that absolute and unincumbered title should be acquired by the government under the condemnation suits, and that thereupon the government should grant a use permit to defendant for a nominal consideration, giving defendant practically the same rights in its right of way as it then held. But it is doubtful whether under the law of South Carolina a public service corporation could part with title to its right of way needed for the public service, even by solemn deed of conveyance. Matthews v. Seaboard Air Line Ry., 67 S. C. 499, 46 S. E. 335, 65 L. R. A. 286; Blume v. Southern Ry. Co., 85 S. C. 440, 67 S. E. 546; Atlantic Coast Line R. Co. v. Searson, 137 S. C. 468, 135 S. E. 567; Williams, Mayor, v. Atlantic Coast Line R. Co. (C. C. A. 4th) 17 F. (2d) 17. And certain it is that the government, not having complied with the agreement, is not in a position to insist upon it.

But, even if we assume that the statutes relied upon authorized the condemnation of the right of way, and that the government acquired an unincumbered title by the condemnation suits, we do not think that it is entitled to the injunction prayed. In view of the contract between the parties, defendant is not a trespasser in any aspect of the case, but is maintaining its power lines over the lands in question under the agreement by which the government acquired title to the lands. If, as contended, it was the duty of defendant under this agreement to apply for a use permit, the evidence is that it duly made application therefor in accordance with the directions given to it by the officials of the government with whom it was dealing at the time the agreement was made. No objection was made to the form or content of the application, but promise was given that the permit would be issued as soon as the title to all of the tracts of land should be acquired by the government. Defendant seems to have done all that it was required or could have been expected to do. That it has not received a formal permit is not its fault, but the fault of the government, first, in delaying the permit, and later in attempting to attach to it conditions not warranted by the agreement. Under such circumstances, the government will not be allowed to take advantage of its own wrong; but equity, considering that as done which should have been done, will treat defendant as having received a permit in accordance with the agreement and as occupying the right of way in accordance therewith. When the situation of the parties is so considered, defendant cannot be enjoined as a trespasser; for there is no proof that it has violated in any way the regulations of the Forestry Commission, or that it is interfering in the slightest particular with the proper management of the forest reserve.

The case of Utah Power & Light Co. v. U. S., 243 U. S. 389, 37 S. Ct. 387, 61 L. Ed. 791, relied upon by the government, has no application here. In that case the power company, without contract or permit, constructed reservoirs, power lines, etc., upon forest lands of the government, relying upon an understanding with certain government officers that all rights essential thereto would be granted under the act of 1905 (33 Stat. 628). It was held that the government was not bound or estopped by the agreement of its officers which the law did not permit, and that the company could claim nothing under the act of 1901 (31 Stat. 790) because it had not conformed to its requirements or received any permission or license under it. In that case the defendant entered into an agreement, not authorized by law, with regard to the public domain, which officers of the government could not deal with, except in accordance with the powers conferred upon them by law. In this case, however, defendant was aiding the government to acquire title to land which it did not own; and the only title which the government now has was acquired by virtue of an agreement which was in substance authorized by the Act of March 4, 1913 (16 USCA § 518). We say authorized "in substance," because there can be no sub-

858

stantial difference between acquiring land subject to an easement and acquiring it subject to an agreement that an easement shall be granted. This is especially true in view of the rule of equity that, in the case of such agreements, equity regards that as done which ought to be done, and views the title of the parties as though the agreement had been carried out. See Virginia Shipbuilding Corporation v. U. S. (C. C. A.) 22 F.(2d) 38, 50.

Finally, we think that the injunction was properly denied, because the government, not having complied with its agreement to grant a use permit to defendant, is not in position to invoke the aid of a court of equity. As stated above, the defendant had done all that it was required to do. It had withdrawn its answers in the condemnation suits, and had filed application for a use permit in accordance with its agreement. The government delayed issuing the permit until after the passage of the Federal Water Power Act of 1920 (16 USCA §§ 791–823), when it insisted upon defendant's complying with the provisions of that act and the regulations of the Power Commission. After the decision in the court below, and before the entering of the final decree, it tendered a permit which is said to be in accordance with the provisions of the Act of February 15, 1901 (31 Stat. 790), and the regulations made pursuant thereto. But it would seem that the power of the Secretary of Agriculture to grant permits under the act of 1901 has been repealed by section 29 of the Federal Water Power Act of June 10, 1920, 41 Stat. 1077, 16 USCA § 823. See 32 Opinions of Atty. Gen. 525. And certain it is that the permit as tendered contains many stipulations and conditions entirely inconsistent with the agreement upon which defendant withdrew its answer in the condemnation suits and allowed title to be acquired by the government.

It is said that the parties must have contemplated such a permit as this, because the Secretary of Agriculture was not authorized to issue any other kind of permit. But by the 1913 amendment (16 USCA § 518) to the Weeks Law the government was authorized to acquire lands subject to existing rights of way, and, as stated above, an agreement that the government should acquire unincumbered title and grant an easement in the right of way is not substantially different, as equity regards that as done which ought to be done. The former method would naturally be used where the owner of the land acquired was also the owner of the right of way; the latter, where the right of way was owned by

a different person. In the former case, the conditions under which the right of way should be enjoyed would be stipulated in the deed as provided in the statute, in the latter these would be stipulated in the permit. The probability is that the plan of having the government acquire title and grant a permit for the enjoyment of the easement was decided upon, because it was realized that conditions binding the owner of the easement could not be inserted in a deed from the owner of the fee, where the owners of the fee and the easement were different persons.

But we think that a complete answer to this position of the government is that, even if defendant were entitled to no more than a permit under the act of 1901, the government has delayed the issuance of such permit until the law authorizing the issuance of same has been repealed. We do not think that the right to issue such permit is preserved by section 23 of the Water Power Act (16 USCA §§ 816, 817), nor that the issuance of that kind of permit is authorized under the section relating to minor projects. Section 10(i); 16 USCA § 803(i). The defendant is not required to submit to the conditions imposed by the Power Commission for the issuance of a permit; and, if the government will not, because it cannot, now issue a permit in accordance with its agreement, it will not be heard to ask an injunction restraining defendant from using the right of way, on the ground that the defendant has not received such permit. "He who seeks equity must do equity."

One other contention of the government requires notice. Defendant's deed to the right of way over what is known as the John Lochrie tract contained the provision: "This grant is made subject to the contract of bargain and sale heretofore made by me of the foregoing tracts along with certain other tracts to the Government of the United States of America. Also subject to approval by proper officers of the Government." At the time of the execution of the deed, the government held a contract for the purchase of the land from Lochrie. The proper officers of the government, however, approved the acquirement of the right of way by defendant. And, furthermore, when the government came to acquire title to the land, it acquired it not under the contract of purchase but under condemnation.

It is clear that the contract of purchase cannot be tacked on to the condemnation proceedings, so that what was subject to the former will be subject to the latter. The title acquired by condemnation is title acquired

in invitum. It does not depend upon, or derive any benefit from, a prior contract. We think it clear, therefore, that the provisions in the deed of the right of way by Lochrie did not enable the government to acquire the right of way by condemnation when it acquired title to the Lochrie tract of land. And, of course, in view of the effect of the contract between the defendant and the government to which we have already adverted, the defendant would not be a trespasser upon the lands in question in any event, nor would the government be entitled to the aid of equity to enjoin defendant from maintaining its power lines across same.

For the reasons stated, we think that the injunction was properly denied, and the decree of the District Court refusing same is accordingly affirmed.

Affirmed.