UNITED STATES of America,
Plaintiff,

v.

929.70 ACRES OF LAND, MORE OR
LESS, situated IN HUGHES COUNTY,
STATE OF SOUTH DAKOTA, et al.,
and Unknown Owners, Defendants.

Civ. No. 360 C. D.

United States District Court
D. South Dakota,
Central Division.

June 5, 1962.

As Amended July 23, 1962.

Harold Doyle, U. S. Atty., and Robert L. Jones, Asst. U. S. Atty., Sioux Falls, S. D., for plaintiff.

A. C. Miller, Atty. Gen., and Lester H. Herbrandson, Asst. Atty. Gen., Pierre, S. D., for defendants.

BECK, District Judge.

This cause, instituted by the State of South Dakota, involves a motion for a dismissal of a Complaint in condemnation which seeks to acquire the fee simple title of certain land situated on the Missouri River and commonly known as Farm Island. Farm Island is located behind the present site of the Big Bend Dam and Reservoir Project, the current plans and specifications for which necessitate its inundation by formation of backwater.

Prior to 1889, Farm Island was a part of the Sioux Reservation which was established by treaty in 1868, 15 Stat. 635. By the Act of March 2, 1889, 25 Stat. 888, after an attempt to obtain the required ratification of the Sioux under a similar act in 1888, 25 Stat. 94, Congress granted Farm Island to the City of Pierre, South Dakota, with the requisite three-fourths of the male-adult Sioux Indians having approved of the grant. On August 4, 1947, pursuant to an agreement by the City of Pierre and certain State officials, Congress passed an enactment, 61 Stat. 740, giving its consent to

a transfer of Farm Island to the Department of Game, Fish and Parks of the State of South Dakota with the same conditions and restrictions imposed in the legislative grant of 1889,[1] as amended by the Act of August 16, 1937, 50 Stat. 648,[2] by the Act of June 17, 1940, 54 Stat. 405,[3] and the Act of August 4, 1947, 61 Stat. 740.[4]

Notice in Condemnation was served upon the movant on November 22, 1960, informing the defendants that a Complaint in condemnation had been filed in an action to condemn the land in question under authority of the Acts of Congress, approved April 24, 1888, 25 Stat. 94, 33 U.S.C.A. § 591, and March 1, 1917, 39 Stat. 948, 33 U.S.C.A. § 701, which Acts authorize the taking of land for flood control projects; the Act of December 22, 1944 (P.L. 534, 78th Congress), 58 Stat. 887, which authorized the Big Bend Project, and the Act of September 2, 1960 (P.L. 86–700, 86th Congress), 74 Stat. 743, 43 U.S.C.A. § 377a, which Act appropriated funds for these purposes.

That Act and the amendments thereto gave rise to and the establishment of a public trust in the Farm Island property for the use and benefit of the general public, as specified in the grant, with the State of South Dakota as the trustee, Restatement of the Law, Trusts, 2d. Sec. 12.

While it is true as the movant contends that land devoted to a public use may not be taken for another public use under the power of eminent domain, "it is equally well settled that this may not be done, unless the intention of the Legislature to that effect has been manifested in express terms or by necessary implication", United States v. Southern Power Co., 4 Cir., 31 F.2d 852 (1929); 20 C.J. 602; 29 C.J.S., Eminent Domain § 74; Western Union Tel. Co. v. Penn. R. Co., 195 U.S. 594, 25 S.Ct. 150, 49 L.Ed. 332, 1 Ann.Cas. 533, Adirondack Railway Co. v. New York State, 176 U.S. 335, 20 S.Ct. 460, 44 L.Ed. 492, and Portland Ry., Light & Power Co. v. City of Portland, C.C., 181 F. 632 (1910). This rule, however, as noted in the same opinion, " * * * is based, not upon any lack of power upon the part of the government, but upon the presumed intention of the Legislature * * *."

Thus, it is within the power of the government in eminent domain proceedings, to take property held in trust for public use, if from the legislation enacted, it appears that the Congress intended the taking as necessary for the completion of a proposed project. The Federal Government by virtue of its sovereignty, may in such cases, "regardless of the wishes either of the owners or of the States, acquire the lands which it needs within their borders". United States v. Sixty Acres, More or Less, of Land, D.C., Ill. 28 F.Supp. 368 (1939), Kohl v. U. S., 91 U.S. 367, 23 L.Ed. 449; James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct.

---

1. "(U)pon the express condition that the same shall be preserved and used for all time entire as a public park, and for no other purpose, to which all persons shall have free access * * *".

2. Upon request by the City of Pierre, Congress enacted this bill which in substance permitted the City to construct and maintain amusement and recreational facilities at a charge to the public. This approval was made subject to the general conditions that sales of alcohol (other than beer) were prohibited; the receipts from all the charges be used only for the purposes of maintaining and developing Farm Island; and that Farm Island be designated as a game refuge.

3. Under this Act the powers of the City of Pierre and the State of South Dakota were extended so as to permit them to remove wild animals and birds as might be detrimental to the maintenance of Farm Island as a game refuge.

4. Congressional consent was here given to a transfer of Farm Island from the City of Pierre to the Department of Game, Fish and Parks of the State of South Dakota in accordance with Resolution 376 of the City of Pierre, which, among other things, prohibited the State from selling the property.

208, 82 L.Ed. 155, 114 A.L.R. 318, and Chappell v. United States, 160 U.S. 499, 509, 16 S.Ct. 397, 40 L.Ed. 510.

■ As those precepts are applied to the legislation which preceded the plans for the Big Bend Dam, it is to be observed that the Congress of the United States, under the provisions of the River and Harbor Improvements Act, 33 U.S.C.A. § 591, specifically declared:

"The Secretary of the Army may cause proceedings to be instituted, in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, right of way, or material needed to enable him to maintain, operate or prosecute works for the improvements of rivers and harbors for which provision has been made by law; such proceedings to be prosecuted in accordance with laws relating to suits wherein the proceedings may be instituted; *Provided, however,* That when the owner of such land, right of way, or material shall fix a price for the same, which in the opinion of the Secretary of the Army, shall be reasonable, he may purchase the same at such price without further delay: * * *".

and that the Congress thereafter impliedly if not explicitly, included the Big Bend Dam as one of the river improvements contemplated and to be controlled by the terms of the River and Harbor Improvements Act, as it approved [5] the report in Senate Document No. 247:

"12. * * * The Big Bend project is considered highly desirable in the ultimate development inasmuch as approximately 60 feet of head is thereby made available * * *. The plan also utilizes practically all of the available power head on the Missouri River * * *.",

and as it allocated funds towards the construction out of the $706,491,600 appropriation provided for under the September 2, 1960 Act, (P.L. 86–700, 86th Congress) 74 Stat. 743.

As for the contention that the River and Harbor Improvements Act of 1944 and the specifications then presented by Senate Document No. 247 and related material, did not necessitate backwater inundation of Farm Island and that the Congress therefor has not manifested a taking to the extent now proposed, let it be said, that the final plans for the Big Bend Dam were within the broad scope of the original Act and that the Congress thereby necessarily intended inclusion of all specifications, which detailed final plans for completion of the entire river improvement project. Basic policy on a project, as vast as this one and authority to proceed, was for the Congress and it was for the Secretary of the Army, to whom power was delegated, to work out the details and have them submitted for approval. Progress toward completion from a practical point of view, could hardly have been made in any other manner.

Compelling proof that the Congress intended such arrangement is in the September 2, 1960 appropriation, supra, which followed the report to the United States Senate on the Big Bend Dam, as presently planned and hearing thereon, October 4, 1959.

Movant's further contention to the effect that the Farm Island property can not be taken under the government's rights in eminent domain, because the public trust created by the legislative grant of 1889 contained no power of revocation, is not much more than repitition of arguments heretofore advanced and met, and a theory to be rejected, since it conflicts with the doctrine that the plenary powers of a sovereign per-

---

5. Act of December 22, 1944 (P.L. 534, 78th Congress):
   "Sec. 9.    (a) The general comprehensive plans set forth in House Document 475 and Senate Document 191, Seventy-eighth Congress, second session, as revised and coordinated by Senate Document 247, Seventy-eighth Congress, second session, are hereby approved and the initial stages recommended are hereby authorized and shall be prosecuted by the War Department * * *."

mit condemnation under eminent domain of any and all property, by whomsoever held, except that which is within constitutional limitations, United States v. Sixty Acres, Kohl v. United States, James V. Dravo Contracting Co. and Chappell v. United States, supra.

Other arguments: (1) that the proposed project will in effect impede commerce between the states, inasmuch as the Dam forms an impassable obstruction to navigation on the Missouri River and (2) that the Act of August 4, 1947, supra, which forbids the State of South Dakota from selling the Island, also by implication forbids condemnation thereof, in that order, are answered and disposed of in United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243:

> "In our view, it cannot properly be said that the constitutional power of the United States over its waters is limited to control for navigation. * * * In truth the authority of the United States is the regulation of commerce on its waters. Navigability, in the sense just stated, is but a part of this whole. Flood protection, watershed development, recovery of the cost of improvements through utilization of power are likewise parts of commerce control. * * * That authority is as broad as the needs of commerce. * * *"

and by the statement in United States v. 2715.98 Acres of Land, More or Less, in Jefferson County, Washington et al.. D.C.Wash., 44 F.Supp. 683 (1942):

> "Finally, it seems obvious that the limitation on the right of the State to sell its granted school lands refers to sales to private individuals rather than to the acquisition in eminent domain proceedings by the Federal Government of such lands for the Government's own public use."

The necessity for the taking, the discretion exercised by the agency validly authorized with such powers, the extent and interests to be taken, and the determination of whether the thing taken is so taken for public use, are not reviewable, in the absence of allegations and proof that such acts were arbitrary, United States v. Mischke, 8 Cir., 285 F.2d 628 (1961); Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; S.D.C. 55.0103; Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27, and Borden's Farm Products Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281.

This opinion is to be treated as Findings of Fact and Conclusions of Law on the hearing of this motion.

Motion denied.