## CARMACK v. UNITED STATES.
### No. 12420.

Circuit Court of Appeals, Eighth Circuit.
April 26, 1943.

Homer Hall, of St. Louis, Mo., and L. L. Bowman, of Cape Girardeau, Mo. (Frank Kelly and I. R. Kelso, both of Cape Girardeau, Mo., on the brief), for appellant.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo. (Norman M. Littell, Asst. Atty. Gen., and Vernon L. Wilkinson and S. B. Hill, Jr., Attorneys, Department of Justice, both of Washington, D. C., on the brief), for appellee.

Before GARDNER, RIDDICK, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a preliminary decree of condemnation, holding that the United States is entitled to judgment of condemnation and that it is entitled to appropriate the land sought to be condemned, and that the appellant, Iska W. Carmack, has no right, title or interest in or to the property so sought to be condemned. The property is situated in the City of Cape Girardeau, County of Cape Girardeau, Missouri, and the United States seeks to condemn it as a site for a United States Post Office and Custom House. The land was originally conveyed in 1807 by its then owner, Louis Lorimier, to the Board of Commissioners and Assessors for the use of the District of Cape Girardeau. The deed recites that it was executed pursuant to a proposal of the grantor, made on the 13th day of January, 1806, to have the Seat of Justice of that district permanently fixed upon his land at that place. The deed contains provisions in the nature of conditions or limitations that the land so given should "be and remain forever common and public, and never to be appropriated to private use, agreeably to the explicit intention of the donor."

In 1814, the Seat of Justice having in the meantime been removed from Cape Girardeau to Jackson, the judges of the Court of Common Pleas in form conveyed this tract to the heirs of Louis Lorimier, and on September 11, 1820, all of the heirs of Louis Lorimier, deceased, conveyed the premises by quit claim deed to the inhabitants of the Town of Cape Girardeau collectively "for their use, benefit and behoof forever." This deed conveyed certain other property not here involved, and concluded with the following paragraph:

"Provided always that the several tracts or parcels of land thus granted to the Town of Cape Girardeau and the citizens thereof shall remain forever affected and appropriated to the public uses to which they are respectively intended, and that they, nor any part of them, shall never become private property."

The property is in the nature of a public park upon which is located a court house used by the Court of Common Pleas of Cape Girardeau County, a public library building, a bandstand, a memorial monument surrounded by a fountain, and a memorial monument to W. F. D. Bajer, the latter being in front of the library building. The park upon which these structures are located is used for gatherings of the public generally, for band concerts, gatherings of the Boy Scouts, and gatherings of various other groups. It is also used as a place for recreation, and is furnished with settees. The library is a public one, used by the public generally. The bandstand is not only used by the band in giving concerts, but is used for public speakings. The second story of the court house is occupied by the Common Pleas Court, a judge's chambers, and a law library for the court, the entire second floor being appropriated to the Common Pleas Court service. The first floor is occupied by various city officials, including the city clerk, the clerk of the Court of Common Pleas, the city engineer, the mayor, the city council and the city attorney. There is a basement in this building used largely for a storage place, in which to keep the files and records of the Court of Common Pleas. The Government seeks to condemn all the property with the improvements thereon, "except the library building."

The court entered findings, finding, among other things, that the Town of Cape Girardeau subsequently became the City of Cape Girardeau; that the appellant does not reside in the City of Cape Girardeau but owns property within the city, on which she pays taxes; that the acquisition of the property as a site for a post office and custom house building will cause the discontinuance of the use of the property for the purpose of holding the Cape Girardeau Court of Common Pleas thereat. It concluded as a matter of law that the answer failed to allege facts which would justify the conclusion that the Government had acted arbitrarily in the selection of the property sought to be condemned as a site for a government building; that

appellant had no interest which would permit her to maintain the defense asserted by her; that the property is sought for a public purpose; that the plaintiff has the right to acquire it for that purpose; that the present ownership of the property is not material at this stage of the proceedings, except for the purpose of ascertaining whether a necessary present public use will be interfered with. In the decree the court adjudged that the use for which the plaintiff sought to acquire the land was a public use, and that such defendants as had any right or title to the land were entitled to compensation in damages for the property taken and appropriated, but that appellant had no right to share in such compensation.

At the close of all the evidence in the case, appellant filed a demurrer to its sufficiency, on the grounds: "First, said evidence does not contain proof of the allegation in the sixth paragraph of plaintiff's petition that funds are available to pay any award or awards which may be rendered in this condemnation proceeding. Second, said evidence does not contain any proof that the Federal Works Administrator acted jointly with the Postmaster General as provided by the Federal Statute. Title 40 U.S.C.A. § 341. The proof (Plaintiff's Exhibit 1) shows that only the Acting Administrator of the Public Works Agency acted alone. Third, said evidence contains no proof of the allegations in the second paragraph of plaintiff's petition that the site selected was necessary for the construction of a United States Post Office." The demurrer was overruled and the court entered findings and decree as above outlined. Thereafter, appellant interposed a motion to set aside the findings and judgment, or to grant a new trial upon various grounds, but this motion was stricken by the court as being filed out of time.

In seeking reversal, appellant, among other things, contends that: (1) The District Court erred in holding that the petition of the Government states facts sufficient to constitute a cause of action under the statutes of Missouri and the decisions of the Supreme Court of Missouri relating to condemnation proceedings; (2) the court erred in not sustaining the demurrer to all the evidence, which demurrer was offered by appellant, Iska W. Carmack, at the close of all the testimony given and offered at the trial of the case; (3) the court erred in allowing the appellee to condemn property underneath the public li-

brary building, without including the library building itself; (4) the court erred in not holding that the Acting Administrator of Federal Works Agency acted arbitrarily and improperly in determining the necessity for and the selection of the proposed site for the new Post Office and Custom House building.

At the very threshold of our consideration of this case we are met by the contention that appellant had no such interest in the property sought to be condemned as entitled her to be heard either in the lower court or in this court. The purpose of the hearing resulting in the judgment appealed from, was to determine whether or not the Government was entitled to maintain the condemnation proceeding. The trial court recognized this and attempted to impress the fact on the mind of counsel for the respective parties but apparently with indifferent success. Appellant, it is conceded, is a direct heir of the original owner and donor of the land in controversy, Louis Lorimier, the common source of title. She is the owner of lots in the City of Cape Girardeau, and hence is a taxpayer, and she resides in the County of Cape Girardeau, although without the limits of the City of Cape Girardeau. The land was dedicated to a public use by her ancestor and has been actually devoted to such public use continuously for more than 100 years last past. Conceding that she has no such interest in the property as would entitle her to participate in the compensation which the Government may ultimately be required to pay for its taking, she is a successor in interest to the original donor who dedicated the land; she is, too, the owner of property in the City of Cape Girardeau, and the deed of dedication contains provision that "for and in consideration of the sum of One Dollar, * * * and for diverse other good considerations, and more particularly for the convenience and encouragement of the inhabitants of the Town of Cape Girardeau and owners of lots in or near the same." Being the owner of lots in Cape Girardeau, being a taxpayer therein, and the heir of Louis Lorimier, deceased, who conveyed the land, dedicating it to certain public purposes, she would seem to have more than the general interest of a nonproperty-owning inhabitant.

In Mott v. Morris, 249 Mo. 137, 155 S. W. 434, 438, a grantee sought to sell certain real estate in violation of the conditions of a deed under which he held the same. Defendant in the case alleged that she was an heir of the donor and asserted that she had a right to have the wishes of her predecessor carried out so far as they were specified in the deed of conveyance. In the course of the opinion the court said: "The premises all considered, we are of opinion that plaintiffs are without power to alien the trust estate for any except church purposes, and, on the other hand, that defendant has no reversionary interest under the terms of her ancestors' grant. This does not mean, however, that she has no right to ask the interference of a chancellor to preserve the trust created by her ancestors."

We are therefore of the view that appellant, in the circumstances here disclosed, had such special interest as entitled her to object to the property being taken for a purpose destructive of the public use to which it had been dedicated by her ancestor. The trial court was therefore in error in holding that she had no such interest as would permit her to maintain the defenses asserted by her.

Apparently based upon this conclusion, the court declined to consider the contention of defendant that the Government had acted arbitrarily in the selection of the property sought to be condemned. This issue, we think, should have been determined by the court. The record shows without dispute that the property has been devoted to public use, not alone because the owners chose to do so, but because they were required by the deed of dedication so to do. There was a legal obligation to maintain the property for the designated public purpose. This public use may not as a matter of law exempt the property from condemnation for another which may be exercised consistently with the present public use, or which is of superior rank in respect to public necessity. If this property were the only available property reasonably fitted for the public project, and failure to secure it would result in the failure or destruction of a public project, then unquestionably it might reasonably be taken. In other words, public necessity is a relative term. There is no question of the power of the Government to take this property but there is a question as to whether by a general act it has determined to exercise that power so far as this property, which is already devoted to a public use, is concerned. In the absence of express statutory authority or direction to take property already devoted to another

public use, that authority has been denied unless the legislation as to the specific project is such as to give rise to an implication that such property might be taken.

In United States v. Southern Power Co., 31 F.2d 852, 856, the Fourth Circuit, in an opinion by Judge Parker, in considering the authority granted by the statute authorizing the purchase of lands for forestry purposes, but which did not expressly authorize the acquisition of rights of way of public service corporations, among other things said: "While it is well settled that land devoted to a public use may be taken for another public use under the power of eminent domain, it is equally well settled that this may not be done, unless the intention of the Legislature to that effect has been manifested in express terms or by necessary implication. 20 C.J. 602; Western Union Tel. Co. v. Pennsylvania R. Co., 195 U.S. 594, 597, 25 S.Ct. 150, 49 L.Ed. 332, 1 Ann.Cas. 533; Adirondack Railway v. New York State, 176 U.S. 335, 339, 20 S.Ct. 460, 44 L.Ed. 492; Portland R. Light & Power Co. v. City of Portland, C.C., 181 F. 632, 634. It is true that this rule is ordinarily applied in grants of power to public service corporations, and not where the power is being exercised by the state itself for its immediate purposes. United States v. City of Tiffin, C.C., 190 F. 279. But it is based, not upon any lack of power upon the part of the government, but upon the presumed intention of the Legislature, and should be held to apply in condemnation proceedings, even by the state itself, where the prior public use could not reasonably interfere with the purpose for which condemnation is authorized."

See, also: City of Norton v. Lowden, 10 Cir., 84 F.2d 663; Clarke v. Boysen, 10 Cir., 39 F.2d 800.

■ While the Government as a sovereignty has inherent power to take private property essential to the public welfare, it exercises that power ordinarily pursuant to specific legislation. The right to determine what is a public use and when there is a public necessity for taking specific property is, in the first instance, a legislative rather than a judicial question, but whether in carrying out the purpose of Congress, the officer has acted capriciously or arbitrarily is a judicial question. Rindge Co. v. Los Angeles Co., 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186. Necessity must be combined with a public use and a necessity for the public structure does not, in the circumstances here presented,

imply a necessity for taking this particular property already devoted to a public purpose. That necessity was determined by the Acting Administrator of Federal Works Agency, and whether in determining the issue he acted arbitrarily or capriciously, should be decided by the trial court.

■ In her motion for a directed verdict, appellant brought sharply to the attention of the court and opposing counsel that the evidence failed to show that the Administrator of Federal Works Agency acted jointly with the Postmaster General in the selection of the town or the selection of the site for the construction of the proposed Post Office building. The petition contains no allegation of such joint action, but alleges that, "The Acting Administrator of Federal Works Agency, acting under the authority vested in him by the Acts of Congress aforesaid, has determined and is of the opinion that it is necessary and advantageous to the plaintiff to acquire an estate in fee simple absolute in and to the land hereinafter described." True, there is a later allegation to the effect that the land sought to be condemned "has been duly selected as the new Post Office and Custom House and Court House site," but that allegation is simply the legal conclusion of the pleader, based upon the allegation of fact that the selection had been made by the Acting Administrator of Federal Works Agency. The statute authorizing the Administrator of Federal Works Agency to acquire sites for public buildings, specifically provides that: "* * * in so far as relates to buildings to be used in whole or in part for post office purposes, the Secretary of the Treasury, under regulations to be prescribed by him shall act jointly with the Postmaster General in the selection of towns or cities in which buildings are to be constructed and the selection of sites therein."

The allegations of the petition are not aided by the evidence. In the letter of the Administrator to the Attorney General, it is said: "Under authority of the above cited legislation, this Agency entered into a contract with the City of Cape Girardeau, etc." So far as appears from this letter, the Postmaster General had nothing whatever to do with any agreement to trade the Government's Post Office and Custom House to the City of Cape Girardeau for the property involved in this proceeding, as proposed by the

Administrator of the Federal Works Agency. Such a barter and trade in the property of the United States, used for post office purposes is not, we think, authorized by this statute without the approval of the Postmaster General; in fact, it would seem to be within the province of the Postmaster General to refuse to approve the site after it had been acquired in the manner proposed. Before the Administrator of the Federal Works Agency had authority under the law to direct the institution of this proceeding, the selection of the site and the designation of the town for the erection of a post office building must first have been determined by the joint action of the Postmaster General and the Administrator of Federal Works Agency. This, we think, was jurisdictional, and there is neither allegation nor proof of the required joint action. As this question goes to the jurisdiction of the court to hear and determine the condemnation proceeding and it appears on the face of the record, we must notice it even though, as contended by counsel for appellee, the question had not been timely presented in the trial court.

As the decree appealed from must be reversed and the other questions urged may not again be presented on further proceedings, we pretermit consideration of them here.

The decree appealed from is therefore reversed and the cause remanded for further proceedings consistent with this opinion.