UNITED STATES v. CERTAIN LAND SITUATE IN CITY OF CAPE GIRARDEAU, MO., et al.

No. 482.

District Court, Missouri, Southeastern Division.

May 18, 1944.

---

[1] No opinion for publication.

Harry C. Blanton, U. S. Dist. Atty., of Sikeston, Mo., and M. Walker Cooper, Sp. Asst. to U. S. Atty., of St. Louis, Mo., and B. H. Hasson, Asst. Atty. Gen., of United States, for plaintiff.

I. R. Kelso and L. L. Bowman, both of Cape Girardeau, Mo., and Homer Hall, of St. Louis, Mo., for defendant.

HULEN, District Judge.

This is the second trial of this case. It was instituted to condemn land in the city of Cape Girardeau, Missouri. The Public Buildings Administrator has recommended an expenditure of $430,000 for the erection (post war) of a post office and court house on the proposed site. The issue is the right of the plaintiff to condemn the particular land described in the second amended petition. Iska W. Carmack, defendant, and heir of the donors of the land to the inhabitants of the city of Cape Girardeau has raised the issue. The first trial resulted in the Court holding that Iska W. Carmack had no interest that would permit her to raise and contest that issue. The Appellate Court held to the contrary and declared the law governing the right of plaintiff to condemn the land.[1]

The evidence in this case as to Iska W. Carmack's interest is substantially the same as in the first trial. Her rights resulting therefrom having been heretofore decided, we will not go into that phase of the case.

In the opinion of the Court of Appeals the public use to which the property is now dedicated is described as follows: "The property is in the nature of a public park upon which is located a court house used by the Court of Common Pleas of Cape Girardeau County, a public library building, a bandstand, a memorial monument surrounded by a fountain, and a memorial monument to W. F. D. Bajer, the latter being in front of the library building. The park upon which these structures are located is used for gatherings * * * of various other groups. It is also used as a place for recreation, and is furnished with settees. The library is a public one, used by the public generally. The bandstand is not only used by the band in giving concerts, but is used for public speakings. The second story of the court house is occupied by the Common Pleas Court, a judge's chambers, and a law library for the court, the entire second floor being appropriated to the Common Pleas Court service. The first floor is occupied by various city officials, including the city clerk, the clerk of the Court of Common Pleas, the city engineer, the mayor, the city council and the city attorney. There is a basement in this building used largely for a storage place, in which to keep the files and records of the Court of Common Pleas. The Government seeks to condemn all the property with the improvements thereon, 'except the library building.' "

The evidence as to the present public use of the proposed site, is the same as on the first trial. While "the property is in the nature of a public park", plaintiff does *not* "seek[s] to condemn all the property with the improvements thereon, 'except the library building.' "

The property described in the petition is a tract approximately 280 by 240 feet, near the middle of the Public park and bounded on the west by Lorimier Street. The north line of this tract is 150 feet from the north line of the park, the south line is 84 feet from the south line of the park, thereby leaving a strip of park 150 feet wide on the north side of the proposed building site and a strip 84 feet wide on the south side of the proposed site. The park is bounded on the east by Spanish Street. Spanish Street is 40 feet below the level of the proposed site. To go from Spanish Street to the proposed site it is necessary to ascend approximately 60 steps. The east line of the proposed building site is near the top step, leaving approximately 100 feet between the east line of the proposed site and the east line of the city park. These strips of land thus remaining on the north, east and west, outside of the boundary lines of the proposed site are not sought by plaintiff and are to remain "park" property. (See Government Exhibit 5.) This is the property which the plaintiff desires to condemn and the public use to which it is now devoted.

■ We pass to the law as declared by the Court of Appeals, by which the

---

[1] Carmack v. United States, 8 Cir., 135 F.2d 196, 198.

claim of right to condemn, asserted by plaintiff and challenged by defendant, must be determined. The fact that the land sought to be condemned is now being used for public purposes does not as a matter of law exempt the property from condemnation for another public purpose. If the purpose for which the site is sought is of superior rank with respect to public necessity to the public use now being made of it, the plaintiff should prevail. If the land described in the petition, although now devoted to public purposes, were the only available property reasonably fitted for the public project and failure to secure it would result in failure of the public project described in the petition, there would be no question of plaintiff's right to proceed. The right of plaintiff to condemn the land must stand or fall on the determination by this court of the question, Did the Acting Administrator of Federal Works Agency and the Postmaster General, under the circumstances here presented, act arbitrarily and capriciously in selecting the site—was the act necessary? The term "arbitrarily and capriciously" has been defined to mean an act done "without adequate determining principle; not founded in the nature of things; not done or acting according to reason or judgment"; [2] an unnecessary act. Defendant has the burden of proof.

The law under which plaintiff is proceeding provides that the Administrator of the Federal Works Agency and the Postmaster General must determine by their joint action location of sites upon which post offices are to be constructed. On the first trial there was a failure of proof of joint selection. It now appears no joint selection had been made prior to filing of the petition. Since the decision of the Court of Appeals, holding that proof of joint selection was a jurisdictional fact, the two public officers referred to have executed a site selection of the land described in the petition.

There is no evidence that either the Postmaster General or the Administrator of the Federal Works Agency were ever informed or even now know that the site

selection that bears their signatures (U.S. Ex. 4) describes land that is a public park or that the land was devoted to any public use—except for a "library building". As to the library building, they had no knowledge as to its being subject to removal "on 30 days notice".

The method of selecting a post office site, during the period here involved, is for a "Joint Committee" of two, to make the selection, prepare the instrument so declaring and present it to the Postmaster General and Administrator of the Federal Works Agency for their signatures. Such was the practice followed in this case, except approval was given after the suit was instituted and not before. The "Joint Committee" consisted of the 4th Assistant Postmaster General and the Commissioner of Public buildings. The former acted by virtue of a statute, the latter acted pursuant to Administrative Order Number 1, dated July 1, 1939.

After designating Cape Girardeau as a place for construction of a new post office and court house, twenty-two sites were submitted by various interested parties. Following receipt of these proposals the Joint Committee sent to Cape Girardeau Post Office Inspector M. T. Deutsch, for the purpose of investigating and making a recommendation to the Joint Committee "an available, suitable and fitted site" for the new Federal building. Mr. Deutsch made his investigation and reported to the Joint Committee on August 20, 1940. In due time the site described in the petition was selected by the Joint Committee. Its selection came about as a result of the representations by the officials of the city of Cape Girardeau, that they had a legal right to sell or exchange the park land.

Prior to Mr. Deutsch's visit to Cape Girardeau the city officials of that city conceived a plan of trading the court house park (of which the land described in the petition is a part) or a portion of it for the present "excellent" Federal building and submitted, as one of the twenty-two sites a proposal to that effect.

Without quoting the Deutsch Report in full, in part it refers to the "Disadvantag-

[2] 4 C.J. 1476; 6 C.J.S., Arbitrary, page 145 Baisden v. Floyd County Board of Education, 270 Ky. 839, 110 S.W.2d 671, 673; Corneil v. Swisher County, Tex. Civ.App., 78 S.W.2d 1072, 1074; Adams v. Nagle, Pa., 303 U.S. 532, 58 S.Ct. 687, 693, 82 L.Ed. 999; Vernon's Ann.Civ. St. art. 752e; King v. Falls County, Tex.Civ.App., 42 S.W.2d 481, 482; Central of Georgia R. Co. v. Mote, 131 Ga. 166, 62 S.E. 164, 170; Gen.St.1935, 79-1409, 79-1602, 79-1702; Eureka Building & Loan Ass'n v. Myers, 147 Kan. 609, 78 P.2d 68, 71.

es" of the Park site here in issue as follows: "This location is somewhat removed from the center of carrier delivery and the center of population, and is definitely not in the trend of future business expansion or growth. A new building here would face a side street with only fair residential property on the opposite side. In order to take advantage of symmetrical attractiveness with respect to surrounding streets, views, and buildings, it may be necessary to forego advantages, with respect to necessary approaches and drive-ways".

Comparing the park site (described in the petition) with other sites the report concludes:

"Considering the relative merits and the deterring features of the competing sites, I would give preference to the first three in the following order:

"First Choice—Present Government-owned site, including Bid Nos. 2 and 3.

"Second Choice—Site No. 1, the city-owned park.

"Third Choice—The northeast corner of Themis and Fountain Streets, including the Greene corner, and Bid Nos. 3, 7, and 9–A.

"*It is my opinion that the present Government-owned site and adjoining ground is the most outstanding location in the city. Any of the other sites would be merely a compromise to avoid the demolition of the present federal building. While due regard must be given to public sentiment, it is obvious that the city park site, while it might provide an attractive setting, would present a problem to develop for practical utilization.* The third choice would make a fairly suitable site, especially in the event that the present federal building would remain, but the lack of a bid from Miss Greene and the sentiment in her favor against condemnation is a serious obstacle." (Emphasis added.)

As to the site recommended by the Deutsch Report as "First Choice", in preference to the Park site (described in the petition), the Deutsch report states: "This is an excellent corner location facing the most prominent intersection in the city and on the principal business street. The center of the business section is not definitely ascertainable because of the diversion caused by the three business sections, but this corner is generally regarded as being the center of the business district. This location is about two blocks north and three blocks east of what might be desig-

nated as the center of delivery and the approximate center of population. It is directly across the street from the bus depot, the largest office building in the town, and the two principal hotels which are convenient for sessions of the Federal Court. The location is also conveniently situated with regard to the Southeast Missourian Publishing Company and the Missouri Utilities Company, two of the largest mailers in the city. Regardless of the fact that the trend of the business district is toward the west on Broadway, this would remain the principal and the most prominent intersection because of the character of the buildings now standing. The purchase price of the Bremermann property is reasonable, and the strip owned by Drum can no doubt be purchased for approximately $600."

The reason for the "Joint Committee" rejecting the recommendation of their site agent appears first in the Deutsch Report:

"An important advantage is that the exchange herein provided for (of Park site from the city for the present Federal Building) will allow the Government to dispose of the present federal building and site to a mutual advantage. *No other acceptable offer for an exchange or sale of the present government property is securable.*

"Site No. 1, the city park property, is actively favored by the City Council, and almost unanimously favored by the business men on Main Street. It is pointed out that the *proposed exchange* would give the Federal Government a very prominent location in attractive surroundings, while the city would secure an excellent building for its city offices and city court, of which it is in need, without expense. *On the other hand, there is considerable objection to this site because it is claimed that it would destroy the utility of the park which is a great asset to the city, and the city library north of this location would show up poorly in contrast if the new federal building were erected here.*

"Because of the divergence of opinion, the Chamber of Commerce in a recent meeting decided not to make any official comment as to a certain location. The president of the Chamber of Commerce decided not to give an opinion as to his preference.

"The postmaster, who has no financial or personal interest in any of the locations,

but who is conscientiously interested in civic development, *regards the government-owned site as an outstanding location* but recommends the city park as first choice because *this trade would allow the city to retain a good improvement and allow the Federal Government to secure a site with attractive surroundings.* As a second choice, in the event *that a trade with the city is not feasible,* the postmaster prefers the present government-owned site." (Emphasis added.)

The Deutsch Report closes with this recommendation:

"*For First Choice* I recommend that the present government-owned site be retained and that the adjoining property, Site 2 offered by H. Bermermann be purchased for $15,000, and that a counter offer be made to the owner of Site 3, Ella M. Drum to purchase this site for $600. This recommendation is made because it is believed that the present location *is the most outstanding site in this city,* and because of the numerous limitations on all of the other competing sites which would present an advantageous or desirable transaction.

"*For Second Choice* I have selected Site No. 1, the city-owned park, which could be developed into an attractive setting for the new building, and which could no doubt be secured in an *exchange resulting in mutual benefit* to the city and Government. *The bid submitted by the City* is not intended to be a final offer, and it is expected that after a review of the facts by the Site Committee a counter-offer could be made with respect to a definite area of about 175' x 215' within the park grounds and with respect to improvements in surrounding approaches, removal of trees and fountain, *and demolition of present city building. The mayor and city council verbally agreed to favor any reasonable counter-offer to be made by the Government.* It is my opinion that the government-owned site is valued at approximately $225 per front foot, whereas the park site has a value of about $100 per front foot, and this must be taken into consideration in submitting a counter-offer. *The question of the City Council's authority to make an exchange of this property is in dispute, but this could no doubt be settled by friendly condemnation proceedings,* as the city officials are willing and desirous for the trade." (Emphasis added.)

Defendant's Exhibit A is a stipulation of agreed facts entered into between the plaintiff and the defendant, Iska W. Carmack, since the first trial. This stipulation was entered into in Washington and introduced in evidence in this case in its entirety. The stipulation is approved by Harry L. McNerney, Attorney for the Federal Works Agency. Mr. McNerney was called as a witness in this case by the plaintiff. He stated he was Special Assistant General Counsel for the Federal Works Agency, and assisted in preparing defendant's Exhibit A. Referring to the contents of Exhibit A and that Exhibit A *sets forth the basis upon which the selection of the site was made in this case* this witness testified:

"*It is my understanding that the chronoligical statement given to Judge Kelso contained all of the important items pertaining to the final selection of the new Custom House and Court House and Post Office site* in Cape Girardeau; but the stipulation was prepared in first form by Judge Kelso and agreed to by Mr. Hasson representing the Department of Justice, and myself, based on what he had presented to us as embodying points he was to bring out, as were related in the chronological statement.

"The Court: *Were there material matters before the Department on which they based a decision, that are not in that agreed statement of facts or stipulation?* A. *Not to my knowledge.*

"The Court: Is it your knowledge from an examination of the files in the department with which you are connected that this stipulation that you entered into covers material facts upon which the Department based its decision? A. That is right." (Emphasis added.)

The stipulation states that Mr. Deutsch was the only site agent to visit the city of Cape Girardeau for the purpose of making a recommendation to the Joint Committee considering selection of the Federal building site. After detailing the manner of Mr. Deutsch making his investigation the stipulation recites that "Post Office Inspector, M. J. Deutsch, recommended as his first choice a site other than the public property sought to be condemned in plaintiff's second amended petition."

The stipulation sets forth the facts regarding the public use of the park site and the facts regarding the chain of title by virtue of which the site is now used as a public park, and the conditions contained

in the deed of dedication to the inhabitants of the city.

The stipulation refers to the "agreement for exchange of property" between the city and the plaintiff, and then states that *"The agreement between the city officials of the city of Cape Girardeau and the United States of America for the exchange of the old Post Office Building and site for the property sought to be condemned"* (emphasis added) is based upon representations and claims by the city officials of the city of Cape Girardeau *that they had power to make the exchange.*

The stipulation concludes with this significant paragraph:

"The said Joint Committee considering the selection of site for Post Office, Custom House and Federal Court Building at Cape Girardeau, Missouri, did, on April 7, 1941, *recommend the acceptance of the City's proposal which has been worked out as to form by the said H. S. Roome, Liaison Officer.*

*"The recommended acceptance* of the site sought to be condemned by the Joint Committee *was on the basis of an exchange of the present Federal Building and site thereof, and acceptance was made with the understanding that the United States Government would be permitted* to occupy the present Federal Building and site at Cape Girardeau, Missouri, until after the proposed building had been completed and made ready for occupancy.

*"The acceptance was recommended by the Joint Committee with the agreement on the part of the City Officials of the City of Cape Girardeau, Missouri,* that the City would vacate the premises known as the Library Building, upon thirty days' notice from the United States Government, and thereafter remove the building within a reasonable time." (Emphasis added.)

█ We conclude from this record that the plaintiff concedes in this case that the selection of the site described in the petition, *"was on the basis of exchange of the present Federal Building and site thereof"* for the city park site described in the petition, *as the result of the agreement between the city officials and the plaintiff.* In doing this did the Joint Committee base their act on a false premise, namely: a mistake of law; the law governing the right of the city to sell or exchange the whole or any part of the park site? "Item VI" of the Agreed Statement of Facts reads as follows:

"Item VI.    Agreement to Exchange Property

"That the City Officials of the City of Cape Girardeau, Missouri, represented to the Joint Committee considering the selection of site for Post Office, Custom House, and Federal Court Building at Cape Girardeau, Missouri, that said City Officials desired to negotiate with the United States Government for the exchange of the Court House Park, City Offices, Common Pleas Court House, and Public Library Building, in exchange for the Old United States Post Office Building located in said City of Cape Girardeau, Missouri;

"That said City Officials claimed and represented that they based their authority to sell or dispose property upon Section 7210 and 7211 of the Revised Statutes of Missouri, 1929 [Mo.R.S.A. §§ 7361, 7362]; That the alleged agreement between the City Officials of the City of Cape Girardeau, Missouri, and the United States of America for the exchange of the old Post Office Building and site for the property sought to be condemned *is based upon said representations* as to the right and authority of the City Officials to sell or dispose property under said Section 7210 and 7211 of the Revised Statutes of Missouri 1929." (Emphasis added.)

The decision of the Court of Appeals, Carmack v. United States, 8 Cir., 135 F. 2d 196, 199, in this case states: "The record shows without dispute that the property (described in the petition) has been devoted to public use, not alone because the owners chose to do so, but because they were required by the deed of dedication so to do. There was a legal obligation to maintain the property for the *designated public purpose."* (Emphasis added.)

This obligation rested upon the city officials. The lack of power on the part of the city to sell or exchange the property in question has been passed on by the Supreme Court of Missouri. See Board Regents et al. v. Painter, 102 Mo. 464, 14 S. W. 938, 940, 10 L.R.A. 493. The Supreme Court of Missouri was passing upon the right of the city to dispose of a parcel of the same land, described in the deed by which the park was conveyed and dedicated to public use. In part, the Court said: "This being so, the city had no right or power to convey the lot to the plaintiff. It could no more convey the lot to plaintiff than it could the other parcel called a 'public square'."

The "public square" referred to in the Supreme Court opinion is land part of which is described in the petition. The use of the "public square" for a post office and Federal Court building, which would destroy the practical use of the public square, is as much a departure from the public use for which the property was dedicated, as in the case passed upon by the Supreme Court of Missouri.

The city of Cape Girardeau being without legal right to sell or exchange any part of the park property and having a legal obligation to maintain the property for the designated public purpose set out in the instrument of conveyance, by virtue of which it now occupies the site, we cannot conclude other than that this proceeding was filed in aid of and had as its primary object the execution of the agreement made by the city officials to exchange the park property for the present Federal building, and that the Joint Committee in designating the park site and in turn submitting its selection to the Postmaster General and Director of Federal Public Works, proceeded and acted under a mistake of law as to the right of the city to sell or exchange the land known as the City Park. Had the lawful rights of the city officials of Cape Girardeau been correctly understood by the Joint Committee (that they were without a legal right to sell or exchange the park property) the site would not have been selected, in the opinion of this Court.

Mr. Tucker, Architect for the Public Building Administration, sent to Cape Girardeau to investigate the park site, made this recommendation: "If the city officials *can legally trade* their publicly-owned Court House Park site for the present Post Office building and land, I recommend it be accepted, *and if that is not legally possible, I then recommend the Post Office be sold to the city and land purchased in some other location for the new Federal building.*" (Emphasis added.)

We find in the Deutsch report a like statement as representing the judgment of the Postmaster at Cape Girardeau. Nowhere in the record is there any mention of an intention to take the park site, except by agreement with the city.

There is another point in the record that we think worthy of note, from which it appears that the city officials acted on a mistaken assumption—one of fact. Defendant offered in evidence the deposition of Harlan Bartholomew. Mr. Bartholo-

mew's business is civic engineer and city planner of wide experience, having taken part in development of civic plans in over sixty American cities, including Washington, Pittsburgh, St. Louis, Los Angeles. Mr. Bartholomew was employed by the Chamber of Commerce of the city of Cape Girardeau to prepare a "civic plan" for the city of Cape Girardeau. In part it will be found attached to plaintiff's Exhibit 16. H. Arthur Tucker, in September of 1940, visited Cape Girardeau for the purpose of investigating "conditions on and around the so-called Court house site, *which has been offered in exchange for the present owned Federal property,* for use as a site for the proposed Post Office and Court House Building". Mr. Tucker's Report is United States Exhibit 16. This report contains this paragraph regarding the objective of the city officials of Cape Girardeau, with reference to the Bartholomew plan and the new Federal building. "The above-mentioned city officials favored any scheme developed by the Government in locating this new Post Office and Court House *which would be in accordance with* and also which would expedite the commencement of proposed Civic Center." (Emphasis added.)

On this subject Mr. Tucker concludes as follows: "Because the proposed new Federal Building without doubt, will be the largest and most imposing building to be built in this Civic Center (referring to the Bartholomew plans) it seems obvious that it should be the building erected on the most prominent site of the plan. With the present city-owned park site therefor established as the most prominent feature or focus of the Civic Center, it leaves only the exact location of a building on that site to be determined."

On the other hand Mr. Bartholomew, originator of the Civic plan, testified on location of the new Federal building on the court house · park, as follows: "I would say that it is unfortunate—most unfortunate."

■ We believe the action of the Joint Committee, in the proceeding under a mistake of law, is decisive of this case adverse to the plaintiff, but we do not base our holding on that point alone.

The cause must be considered under those rules of law applying to condemnation proceedings under a general act, which does not specify any certain property shall

be condemned. We are not presented with a case, such as State of Minnesota v. United States, 8 Cir., 125 F.2d 636, where Congress provided for the creation of an Indian reserve, and specified the land to be taken, and in taking the land authorized by statute it became necessary to take land owned and used by the State for a public purpose—a conservation project. In the case at bar plaintiff is acting under a general act and is attempting to take public property already devoted to sound, recognized, lawful, desirous and necessary public purposes. In the opinion of the Court of Appeals it was said: "In the absence of express statutory authority or direction to take property already devoted to another public use, that authority has been denied unless the legislation as to the specific project *is such as to give rise to an implication that such property might be taken.*" (Emphasis added.)

It was stated in United States v. Certain Land in Town of New Castle, C.C., 165 F. 783, loc. cit. 789: "The presumption is that authorized public uses are not to be interfered with under mere general terms of federal or state legislation."

Necessity for taking the particular site in issue in this case; whether the park site was the only available property reasonably fitted for the public project and failure to secure it might result in the failure of a public project; that another site was more desirable and better fitted,—if these questions were debatable, defendant would have failed to carry the burden of proof.

In the case of In re Certain Lands in Lawrence, D.C., 119 F. 453, loc. cit. 456, the Court said: "I doubt if it can be laid down, without qualification, that the public use of a post office is in all places superior to the public use of a park."

We believe a public library, with the building being put to the use to which the one on the park site is now being put, rises to the importance of a park, to say the least.

In the case of United States v. Certain Parcels of Land in Town of Denton, D.C., 30 F.Supp. 372, 379, the question presented was not the taking of the site of a court house building, but whether or not the erection of a post office on a tract of land occupied by a court house would interfere with court proceedings. The right to condemn was granted but the Court said: "If the evidence required a finding that the site selected would materially affect judicial administration in Carolina county, quite a different case would be presented."

Here a valuable city park and its present public uses will be destroyed if plaintiff condemns the park site. The city has given bond to remove by wrecking or otherwise, the present common pleas court house, where Court is held; the building is also used for the city government. Certainly during the course of construction of the new building, judicial administration will be affected. There appears to be no definite arrangements for the Court of Common Pleas in so far as this record is concerned. There is no suggestion for the future of the public library and the building in which it is located—other than removal of the building "on thirty days' notice". There is no necessity for the destruction of these public services, conveniences and improvements. Necessity is not even claimed by the plaintiff.

We are not unmindful that in only rare instances has the plaintiff been denied the right of condemnation. A reading of the authorities, however, does not reveal any case, where condemnation was authorized, where the plaintiff has attempted to proceed by condemnation to effectuate an agreement which one of the parties had no legal right to enter into, and the resulting interference with present public uses of the land sought by the Government's action was so destructive as appears in the present case.

Nowhere in the record do we find any claim by plaintiff that the site proposed is the only available property, reasonably fitted for the public project, or that failure to secure it would result in failure of the project.

Upon the record this Court cannot find that the site described in the complaint is the only available property, reasonably fitted for the public project, when the plaintiff's own representative, chosen because of his knowledge and ability to select sites, has placed another site superior in desirability to the site sought. With this admission of plaintiff's representative this Court cannot find that the failure to secure the site described in the petition would result in failure of the public project. These facts support defendant's position in this case. Nor was there the slightest effort made in this case by the plaintiff to show a necessity for taking the particular property here involved, already devoted to a public purpose. On the contrary the evi-

dence is undisputed and comes from an unimpeachable source, the government's witnesses, that there is no necessity for taking the particular property described in the petition. That another location is preferable is an unchallenged fact in this case. Consequently there can be no necessity by implication. Plaintiff proceeding under a general act, its case must fail for that reason also.

The plaintiff is content, or rather forced to be, to rest its case solely upon the right of the city to sell or trade the park property, coupled with the rule that selection of the site by authorized officers carries an assumption that the decision was based on facts justifying the action taken, until the contrary be shown. The contrary has been shown in this case.

All these questions are aside from the evidence of public sentiment for various sites. It is doubtful if any site is ever selected that is acceptable to all residents of any town or city. Certainly the evidence shows a very sharp division of opinion in Cape Girardeau on the selection of the site here under consideration. This has been the case from inception of the project and will, no doubt, continue to the end. Much of the opposition to the present site is no doubt due to sentiment for the court house building that is to be destroyed, the attractive park that has been built around it, the statues and fountain placed there through the years, that must be moved, the public library that must be moved. Such sites and structures have a strong appeal to many people. They are things that represent the character of a community, its people and its civic pride. To ignore such an appeal, to sanction the destruction of such public enterprises and institutions does not appeal to the Court, in the absence of some showing of necessity therefor.

We note there was offered in evidence the proceeding leading up to and the holding of an election on the park site. The evidence is of little value to the issues. Only one site was submitted to the voters and that was presented as a question of the city making the trade discussed heretofore. Such procedure could not give legal effect to a transaction the city was powerless to perform.

Certain conclusions suggest themselves which should be stated. This is not a case, in fact, where the representatives of the plaintiff have gone to the city of Cape Girardeau and designated the most imposing tract of ground in the city from a landscape viewpoint and which is now used as a public park, for the site of the new Federal building. And this notwithstanding the site is not in the trend of business nor accessible except from one street. That while the plaintiff will not take all the park, it will take a sufficient part of the park to destroy its usefulness as a park. That the plaintiff has proceeded to issue an order for the destruction of the public buildings on the site; buildings in which necessary public business is now transacted, including the Court of Common Pleas, Departments of City Government and the storage of valuable records, and granted to another building in which a public library is housed "thirty days" to vacate. That this action was taken by the Joint Committee, with information in their possession with respect to availability of other sites which shows unquestionably that the action of the plaintiff is unnecessary and the site selected is not now, nor was it when selected, the most desirable and available. If this were the cold record, we believe few would question the conclusion that such action by the Joint Committee was arbitrary and unnecessary. Nevertheless the conclusions, as outlined above, are present as a matter of law on the record in this case. The evidence shows that plaintiff was caused to take action which leads to the same results as outlined above, by virtue of the solicitation and entreaty of the city officials of Cape Girardeau, which solicitation crystalized in an agreement between the city officials of the city of Cape Girardeau and the Government officials to trade the park site (described in the petition) for the present Federal building. The city officials of Cape Girardeau, no doubt acting in perfect good faith, represented to plaintiff or the Joint Committee on site selection, that the city had a legal right to sell or exchange the park site. Also acting in perfect good faith the officials of plaintiff and the Joint Committee "relied" upon the representations of the Cape Girardeau city officials as to their legal right to sell or exchange the park site, and the Joint Committee so relying, "based" their decision as to site selection, upon such erroneous representation. The City of Cape Girardeau being without a legal right to sell or exchange the park property, as held by the Supreme Court of Missouri and in the opinion in this case by the Federal Court of Appeals, leaves the

564

action of the Joint Committee in selecting the park site in the same status, as a matter of law, as if no exchange negotiations had taken place, and the plaintiff's officials had never been induced to consider the site upon the basis of the proposed exchange.

In the case of Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510, the Supreme Court had before it the question of legality of a gas proration order issued by the Railway Commission of Texas, ostensibly for the purpose, among others, of preventing the waste of gas. We think what the Court said with respect to the presumption of the existence of facts justifying the specific exercise of the power there under consideration, applies to the selection of a site for a post office made by and under authority of those agents of the Government to whom such duty has been delegated. Referring to the order in the Thompson case, the Court said, 300 U.S. loc. cit. 69, 57 S. Ct. loc. cit. 371, 81 L.Ed. 510: "It is settled that to all administrative regulations purporting to be made under authority legally delegated there attaches a presumption of the existence of facts justifying the specific exercise. * * * The plaintiffs have assumed the heavy burden of overcoming the presumption and of establishing that the order is an arbitrary taking of their property."

A consideration of all the facts justifies the conclusion that defendant has sustained the burden of proof placed upon her; that the selection of the site described in the petition, under all the facts referred to, amounts in law to an arbitrary and unnecessary act. Plaintiff's second amended petition will be dismissed.