## UNITED STATES v. CARMACK.
### No. 12980.

Circuit Court of Appeals, Eighth Circuit.

Nov. 6, 1945.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo. (J. Edwards Williams, Acting Head, Lands Division, of Washington, D. C., M. Walker Cooper, Sp. Asst. U. S. Atty., of St. Louis, Mo., and Vernon L. Wilkinson and S. Billingsley Hill, Attys. Department of Justice, on the brief), for appellant.

L. Lee Bowman, of Cape Girardeau, Mo., and Homer Hall, of St. Louis, Mo. (Robert D. Abbott, of St. Louis, Mo., and I. R. Kelso, of Cape Girardeau, Mo., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On the first trial of this action, in which the United States seeks to condemn as a site for a proposed postoffice, courthouse, and customhouse building that part of a public park in the City of Cape Girardeau, Missouri, on which are located a public library and a building housing the local court of common pleas, the offices of the City of Cape Girardeau and the court officials, there was a judgment in favor of the United States. We reversed for reasons not necessary to be restated on this appeal from a judgment against the United States on the second trial. Carmack v. United States, 8 Cir., 135 F.2d 196. In remanding the case on the first appeal for further proceedings in the District Court we said that, while the inherent power of the United States to take the lands in question could not be doubted, there was on the record then before us the question as to whether the United States had determined, by the General Acts of Congress under which the condemnation proceedings were prosecuted, to exercise that power in respect to the particular property sought to be condemned; and the further question, if the first should be answered in the affirmative, whether in carrying out the purpose of

Congress the agents of the Government to whom the selection of land for the site of the proposed Federal building had been delegated by Congress had acted capriciously or arbitrarily. Carmack v. United States, supra, 135 F.2d at pages 199, 200. Both questions have been resolved against the United States. This appeal brings into question these rulings of the District Court. Since we conclude that the court's decision on the first question is correct under the facts in this case, we find it unnecessary to consider the second.

The question under consideration is stated in the Government's brief as follows:

"Whether the Acts of Congress authorizing and directing the Postmaster General and the Federal Works Administrator to select towns and sites for post offices, customhouses and court houses empower those officials to select land already devoted by a city and county to public uses where other sites are available and failure to secure such lands will not result in failure of the federal purposes."

■ The precise question, however, for decision is whether, under the facts revealed by this record, Congress may be said to have authorized the Postmaster General and the Federal Works Administrator to take the particular land sought to be condemned. The question is one of statutory interpretation within the competence of courts to decide. Carmack v. United States, supra, 135 F.2d at page 200.

■ The land sought to be taken by the United States was conveyed to the inhabitants of the Town of Cape Girardeau, predecessor of the City of Cape Girardeau, in 1820 to be held forever by the grantees as a public park for the use and benefit of the inhabitants of the town and the owners of adjacent lots. The City of Cape Girardeau has no power to convey any part of the public park nor to devote it to any use other than that specified in the deed under which it has been held by the City and its predecessors for more than a century. Board of Regents of Normal School District No. 3 v. Painter, 102 Mo. 464, 14 S.W. 938, 940, 10 L.R.A. 493; Carmack v. United States, supra. That part of the park now sought to be condemned is occupied by the public library building of Cape Girardeau and by the local courthouse. The entire second floor of the courthouse is used by the court of common pleas, a court of record with jurisdiction in civil and criminal matters. The first floor is occupied by the offices of the City of Cape Girardeau, including the mayor, city engineer, city clerk, city council, and city attorney, and also by the clerk of the court of common pleas. The basement of the building is used largely for storage space for the files and records of the common pleas court. The library building is used as a meeting place for all local civic organizations. The property described in the Government's petition for condemnation is a tract measuring 280 x 240 feet near the center of the park.

■ The District Court found on substantial evidence that the taking by the Government of that part of the park sought to be condemned would result in the destruction of the use of the remainder of the tract as a park; would require the wrecking of the common pleas court building and the removal of the public library building and a public monument; and would materially interfere with the proceedings of the court of common pleas and with the transaction of city business in the courthouse building, and also with the plans for a civic center prepared by an expert employed by the local chamber of commerce for that purpose. The court also found that there was no necessity for the taking of the land described in the petition for condemnation; that other sites in the City of Cape Girardeau were available for the proposed Federal project; that the failure to secure the land in this proceeding would not result in the failure of the Federal project; and that the park was not selected by the Federal Works Administrator and the Postmaster General as a site for the Federal building upon considerations of Federal necessity or advantage, but because of the erroneous belief of these Federal agents that the City of Cape Girardeau had authority to exchange the park site, together with the buildings thereon, for the present Federal building in Cape Girardeau and the land on which it is situated.

We can not say that any of these findings of fact by the District Court are clearly erroneous. On the contrary, each of them was, in our opinion, required by the evidence. By this evidence it was shown that the United States owned a postoffice, courthouse, and customhouse building in the City of Cape Girardeau, located on the most prominent corner of the city, oppo-

site the leading hotels, convenient to the largest patrons of the postoffice, and nearer the center of free mail delivery in the City than any other available location. It further appears that adjoining the site on which the present Federal building stands are tracts of land which the United States may acquire by purchase or condemnation at reasonable cost, and which, together with the site presently owned by the United States, affords sufficient area for any necessary additions to the present building as well as for the construction of a new building. The site now owned by the United States, together with the adjoining available tracts, was selected by the only representative of the Postoffice Department and the Federal Works Agency who made a study of the relative merits of available sites in Cape Girardeau as the most desirable from the standpoint of the United States.

The evidence also established that, prior to the institution of the condemnation proceeding, certain agents of the Public Works Administrator and officers of Cape Girardeau had conceived the idea of an exchange of the park property for the present Federal building and the land on which it is situated, and that negotiations between them to that end had culminated in the proposed argeement between them for the exchange of property. As stated above, this proposed agreement was the moving cause for the selection of the park as the site for the Federal building. When it developed that the City of Cape Girardeau was not only without power but was prohibited by Missouri law from carrying out the proposed contract and thus violating the trust under which it held the park property, the present proceedings for condemnation of the site were instituted as a means for accomplishing indirectly an exchange of properties which could not be directly made. This exchange was to be consummated eventually by the acceptance by Cape Girardeau of the present Federal building and the land on which it is situated in payment for any award against the United States in the condemnation proceedings. The facts set out above are sufficient, we think, to distinguish this case from C. M. Patten & Co. v. United States, 9 Cir., 61 F.2d 970; United States v. Certain Parcels of Land, D.C., 30 F.Supp. 372, and like decisions.

The Government points to no specific legislative grant of authority to take the land involved in this proceeding such as was present in State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 534, 61 S.Ct. 1050, 85 L.Ed. 1487; State of Minnesota v. United States, 8 Cir., 125 F.2d 636, 639. For the authority asserted in the present case the Government relies upon the General Acts of Congress of May 25, 1926, 44 Stat. 630, Reorganization Plan No. 1, §§ 301, 303, effective July 1, 1939, 53 Stat. 1426, 1427, 40 U.S.C.A. § 341, conferring upon the Federal Works Administrator authority to acquire by purchase, condemnation, or otherwise in the District of Columbia and in the several States sites and additions to sites, and cause to be constructed thereon adequate and suitable buildings for the accommodation of various departments of the Government. We think it may not be said that Congress, in conferring upon certain administrative officials of the Government power to select cities and sites in cities to be used for the erection of buildings to be used by the United States for postoffices, courthouses, and customhouses, intended to authorize these officials to select as a site to be condemned for this purpose one not only occupied by a State or one of its political subdivisions for a governmental purpose of equal rank, but also held in trust for the specific purpose for which the land was being devoted, with no power to authorize another or different use, and where the proposed taking by the United States would, as the District Court has found in this case, materially interfere with necessary local governmental functions.

If the Act relied on by the United States should be held to confer upon the Public Works Administrator and the Postmaster General the power asserted in this case, it would subject the States and their political subdivisions to an interference with necessary local governmental functions at the decision of Federal administrative officials, with possible unfortunate and unnecessary conflicts between State and Federal authority. We find no basis in the Act relied on by the Government for attributing to Congress any such intent.

The judgment of the District Court is affirmed.