**UNITED STATES of America,
Plaintiff,**

v.

**20.53 ACRES OF LAND IN OSBORNE
COUNTY, KANSAS, CITY OF DOWNS,
a Municipal Corporation et al., Defendants.**

**Civ. A. No. T–3986.**

United States District Court
D. Kansas.

Jan. 4, 1967.

Newell George, U. S. Atty., Elmer Hoge, Asst. U. S. Atty., Topeka, Kan., Frank E. McAnear, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

George Collins, of Collins, Martin, Pringle, Schell & Burns, Wichita, Kan., for defendant landowners.

MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TEMPLAR, District Judge.

On March 3, 1966 plaintiff filed its Complaint in Condemnation, seeking to acquire interests in a number of tracts therein described and which belonged to the City of Downs, Kansas, an incorporated municipality under the laws of the State of Kansas. On the same date the Secretary of the Interior, acting by and through his duly delegated agent, the solicitor of the Department of Interior, filed a Declaration of Taking pertaining to the tracts described in the complaint, and he deposited in the registry of the Court his estimate of just compensation.

On March 28, 1966 the defendant, City of Downs filed its answer. Thereafter on September 1, 1966 plaintiff filed a motion for summary judgment on the issue of plaintiff's right to acquire by condemnation the estates sought in the land and real estate described in the Declaration of Taking. Leave was thereupon granted to the parties to submit briefs on the questions involved. Briefs were prepared and have been submitted. They have been carefully examined and considered by the Court.

The issues raised are accurately stated in defendant's brief. They are:

"1. Whether the Secretary of the Interior or the Bureau of Reclamation has been duly authorized by law to condemn any of the property herein involved.

2. Whether the authority of Secretary of the Interior or Bureau of Reclamation, if any, extends to the condemnation of property owned by a political subdivision of the State of Kansas already being put to public use."

It is the contention of the defendant City that:

1. The authorities cited by the United States in its complaint in condemnation do not authorize the taking of any of the property herein involved.

2. The United States may not condemn land owned by the City of Downs which is already being put to public uses and is absolutely necessary to the welfare of its inhabitants, in absence of express Congressional authorization.

## DOES PLAINTIFF HAVE AUTHORITY TO MAINTAIN THIS ACTION OF CONDEMNATION.

Defendant urges that unless the Congress of the United States has authorized the construction, operation and maintenance of the Glen Elder Unit, Solomon Division, Missouri River Basin Project, the action must fail and be dismissed. Rule 71A F.R.Civ.P. requires that the complaint must contain a short and plain statement of the authority for the taking. Defendant charges that the statement of authority for taking is not short and plain and that the statute cited by plaintiff in its complaint does not specifically authorize the proceeding in general, and the taking in particular.

The Court has examined the statutory references set out in plaintiff's complaint as the authority claimed by plaintiff for taking the property described in the complaint and in the Declaration of Taking.

On December 22, 1944 Congress approved an Act, same being Chapter 665, 78th Congress, Second Session, 58 Stat. 887, 891, which provided in substance (Section 9(a)) that the general comprehensive plan set forth in Senate Document 191, 78th Congress, Second Session, as revised by Senate Document 247, were approved and the initial stages recommended therein were authorized to be prosecuted by the War Department and the Department of the Interior as speedily as may be consistent with budgetary requirements. This Act further declared (Section 9(b)) that the general comprehensive plan for flood control and other purposes in the Missouri River Basin, approved by Act of June 28, 1938 (52 Stat. 1218) be expanded to include the works referred to in Section 9(a).

The works referred to in Section 9(a) are contained in Senate Document 191, as supplemented by Senate Document 247 of which the Court takes judicial notice. Document 191 is a report of the Secre-

tary of Interior on the Missouri River Basin, presented to the Senate by Senator O'Mahoney on April 5, 1944 which on page 94 states that the stream regulation is needed in the Smokey Hill Basin for irrigation and flood control and the primary need of the downstream valley area of the Smokey Hill Valley is flood control; that six reservoirs are required to meet the needs of the Basin, and one of them being specifically designated and referred to as "Glen Elder" on the Solomon River with capacity of 304,000 acre feet.

A summary of irrigation units in Missouri River Basin is set out on page 95 of the document which names Glen Elder as one reservoir and a list of proposed reservoirs in the Basin include Glen Elder on the Solomon River, and the amount of land to be served by the Glen Elder unit. Senate Document 247 modified Document 191 in some detail but did not effect any change in the Glen Elder Project.

Thereafter, Congress on October 28, 1965 adopted the Public Works Appropriation Act of 1966 making appropriations for agencies for the Department of Interior and further directing that the Bureau of Reclamation should have designated funds to carry out functions provided in federal reclamation laws (Act of June 17, 1902, 32 Stat. 388 and Acts amendatory thereto, or supplementary thereof and other Acts applicable to the Bureau.) 43 U.S.C. § 371 et seq. The appropriation provided that it was

"For construction and rehabilitation of authorized reclamation projects or parts thereof and for other related activities, as authorized by law, to remain available until expended  *  *" 79 Stat. 1101.

43 U.S.C. § 421 relates to acquisition of lands for irrigation projects and provides for purchase or condemnation of *any rights of property,* by the Secretary of the Interior for the purpose of carrying out the authorizations and directions made under the Federal Reclamation Act and all Acts amendatory thereto or supplementary thereof. (43 U.S.C. § 371 (b)).

Defendant City insists that there is a complete absence of any reference in any of the Congressional enactments to property belonging to the City of Downs and for this reason, plaintiff must show more than citation of statutes referred to in its complaint to authorize condemnation of the defendant's property described in this proceeding; and that specific authorization is more essential where the property sought to be condemned is presently being put to public use which is no less important than that used for a project designed to irrigate the land.

■ After reviewing the record, the numerous Congressional Acts and directives and the appropriations to supplement and implement them, the Court must find that the statutes expressly grant power to acquire the rights sought to be taken here. The legislative history is consistent and the project could not be developed without taking the property sought, conditioned only on the payment of just compensation. The applicable rule is stated in the case of State of California v. Rank, 293 F.2d 340, 354, 9th Cir.:

"The general congressional intent is clear: that where acquisition of property is necessary to permit the project to go forward, such property should be acquired. To require a showing that Congress had a particular piece of property in mind as a condition to governmental authority to condemn that piece of property would, in a project of this magnitude, wholly defeat the general congressional intent. If it be felt that in the public interest exception to the general authority to condemn should be made, these exceptions should be proposed to and made by Congress and not the courts."

■ The Tenth Circuit Court of Appeals has sustained the view that in harmony with principles of fundamental law, the power of eminent domain can be exerted only by virtue of legislation expressly authorizing its exertion and that such power is dormant until enactment

of legislation expressly authorizing its exercise and that under normal conditions, statutes granting such power should not be enlarged by implication. After declaring this to be the rule the Court held that a general legislative grant under a general statute to public utilities authorizing them to obtain by condemnation a right of way across land for the construction thereon of an electric line for use in the conduct of the utilities business was sufficient authorization to entitle a power company without further authority, to acquire such right of way wherever they declared it to be necessary and essential to the proper conduct of its business. Cline v. Kansas Gas & Electric Company, 10th Cir., 260 F.2d 271.

Also see State of Minnesota v. United States, 8 Cir., 125 F.2d 636; Nichols on Eminent Domain, 3rd Ed. Vol. 1, Sec. 3.11. Also compare Berman v. Parker, 348 U.S. 26, page 33, 75 S.Ct. 98, page 103, 99 L.Ed. 27 where the Court said:

> "Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end * * * Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine."

■ While it is true that a state can bestow property rights on its citizens, among them municipal corporations and the residents thereof, and these the United States must respect, still no right or power to acquire these rights or this property can be taken from the United States. State of California v. Rank, supra.

■ It necessarily follows that the Court must hold the Secretary of the Interior has been duly authorized by law to condemn property for the Glen Elder unit, Solomon Division, Missouri River Basin Project under the authorities alleged in paragraph two of plaintiff's complaint. Cf. United States v. Bowman, 7 Cir., 367 F.2d 768.

## MAY THE UNITED STATES CONDEMN LAND OWNED BY THE CITY OF DOWNS WHICH IS ALREADY BEING PUT TO PUBLIC USES NECESSARY TO THE WELFARE OF ITS INHABITANTS, IN ABSENCE OF EXPRESS CONGRESSIONAL AUTHORIZATION.

The Court has already found that general authority has been given plaintiff to proceed with the acquisition of such estates in property determined by the acquiring agency to be necessary in order to carry out the Congressional mandate authorizing construction, development and operation of the Glen Elder Reservoir Project. The remaining issue is whether specific and express Congressional authorization is necessary before property now in public use and serving the welfare of a political subdivision of a state may be taken over such municipality's objection.

While there is respectable authority sustaining the view that a legislative body may authorize a corporation to take land for public use which has already been appropriated for different public use provided that before such taking may be accomplished, the intention to grant such authority must be manifested in the statute. See Old Colony Railroad v. Framingham Water Company, 153 Mass. 561, 27 N.E. 662; Easthampton v. County Commissioners of Hampshire, 154 Mass. 424, 28 N.E. 298; and cases cited in 29A C.J.S. Eminent Domain § 74, pp. 326, 327. These cases generally deal with acquisitions sought by private corporations as distinct from those involving the sovereign authority of the United States.

Defendant cites the general rule stated in 29A C.J.S. Eminent Domain § 74, p. 326 to support its position. This statement is in turn supported by the case of Carmack v. United States, 8 Cir., 135 F.2d 196, 200. This case was remanded to the United States District Court for the Eastern District of Missouri. That Court held that where a federal agency seeks to condemn land held by a town in trust for use as a public park, and the

taking by the Federal Government would destroy the existing use, the general Congressional authorization to take Post Office sites did not include the right to take such property for governmental purpose of equal rank. This holding was sustained on appeal, see 151 F.2d 881, 883. But on certiorari when reviewed by the Supreme Court of the United States, in the case of United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209, the lower Court's rulings were reversed and the Supreme Court held that:

"The fact that the site in question is held in trust instead of in fee and is already being used by a governmental subdivision of a State for public purposes impressed upon it by private owners over a century ago cannot prevent its condemnation by the United States as a means of carrying out an admittedly federal governmental function.

"If the United States has determined its need for certain lands for a public use that is within its federal sovereign powers, it must have the right to appropriate that land.

"Decisions of federal representatives as to the means of carrying out an admittedly federal governmental function cannot be subordinated to those of individual grantors or local officials.

\*　\*　\*　\*　\*　\*

"The comparative desirability of and necessity for the site were matters for legislative or administrative determination rather than for a judicial finding."

■ Defendant has cited cases supporting the view expressed in the first two sentences of § 74 found at 29A C.J.S. Title Eminent Domain, p. 326, but the third sentence of that section reads as follows:

"However, the general rule does not ordinarily apply where the power of eminent domain is being exercised by the sovereign itself, such as the state or federal government, for its immediate purposes, rather than by a public service corporation or a mu-

nicipality \* \* \* but it has also been held that the court will not undertake to determine which of the two uses is more beneficial to the public."

■ The Court is also confronted with the rule laid down in the case of State of Oklahoma ex rel. Phillips v. Guy Atkinson Company, 313 U.S. 508, p. 533, 61 S.Ct. 1050, p. 1063, 85 L.Ed. 1487 where the Supreme Court said:

"Whether the work of flood-control, including river flow, would be better done by a dam of one design or another is for Congress to determine. And, as we have said, the fact that ends other than flood control will also be served, or that flood control may be relatively of lesser importance does not invalidate the exercise of the authority conferred on Congress."

The opinion continues in part, p. 534, 61 S.Ct. p. 1063:

"The Tenth Amendment does not deprive 'the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end' \* \* \* since the construction of this dam and reservoir is a valid exercise by Congress of its commerce power, there is no interference with the sovereignty of the state \* \* \* The fact that land is owned by a state is no barrier to its condemnation by the United States.

"Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield.

"Nor can a state call a halt to the exercise of the eminent domain power of the federal government because the subsequent flooding of the land taken will obliterate its boundary. And the suggestion that this project interferes with the state's own program for water development and conservation is likewise of no avail. That program must bow before the 'superior power' of Congress."

■ Contentions similar to those advanced here by defendant were consid-

ered in United States v. Certain Parcels of Land, D.C., 209 F.Supp. 483, affirmed; United States v. Pleasure Drive, 314 F.2d 825. What was said in the lower court's opinion, adopted by the Court of Appeals is applicable, p. 487:

"The states' dominion over lands within their borders cannot avail to frustrate the supremacy given by the constitution to the government of the United States in all matters within the scope of its sovereignty. This is not a matter of words, but of things. If it is necessary that the United States government should have an eminent domain still higher than that of the state, in order that it may fully carry out the objects and purposes of the constitution, then it has it. Whatever may be the necessities or conclusions of theoretical law as to eminent domain or anything else, it must be received as a postulate of the constitution that the government of the United States is invested with full and complete power to execute and carry out its purposes."

The opinion further states, p. 487:

"Since *Carmack*, there is no basis for doubt that the United States has the power to take lands already devoted to public use in the exercise of its constitutional powers."

The Court is aware of the rules stated by Judge Phillips in his opinion in the case of Clarke v. Boysen, 10 Cir., 39 F.2d 800, 816, and in Judge McDermott's opinion in the case of City of Norton v. Lowden, 10 Cir., 84 F.2d 663, but must observe that in each of the cases, the right to acquire property already devoted to public use, was sought to be exercised by private parties and not the United States government. The authorities disclose that where the government is involved a different rule applies.

■ Confronted with the formidable authorities referred to and after considering that which the Court has examined, the ruling must be that plaintiff's motion for summary judgment should be sustained.

It is so ordered.